Matthew M. Levy, J.
On May 13, 1955, the seller and the buyer signed a sales confirmation. The writing set forth the quantity, specifications and price, “ FOB Japan ”; “ Delivery: *516 July/August 1955 from Japan ”; “ L/C [letter of credit] to be opened three banking days after we [the seller] will indicate the cost of freight “ shipment to Portugal will be effected by Seller for buyer’s account and the rate will be indicated until May 24, 1955, for buyer’s approval.” On May 23 by mutual consent the time for the seller to inform the buyer of the freight rate was extended to May 27. By letter sent May 26 (but which was inadvertently misdirected and not received by the buyer until June 1) the seller advised the buyer of the freight rate of 183.6 shillings per metric ton. On June 1, the buyer answered that the proper rate was 110 shillings per metric ton, and that it would have to contact its customer to ascertain whether it should accept the rate stated by the seller. On June 6 the buyer wired the seller that it understood that the cost of freight to Portugal was 130 shillings per long ton and offered to book space on its own behalf if the seller could not do so. On June 7, the seller received a letter from the Marine Midland Trust Company of New York that it was holding an application for a letter of credit in the seller’s favor for approximately $65,000 “ which will be released to you [seller] as soon as the freight differences have been settled ”. On that date the seller informed the buyer that as the cost of freight at the rate offered by the seller was not accepted, and, as the letter of credit was not opened for the cost of material plus the cost of shipment, as specified in the writing of May 13, 1955, “this sale is cancelled due to the fact that you [the buyer] did not fulfill your obligations.”
The writing signed by the parties contained an arbitration clause to the effect that “ [a]ny dispute or controversy arising under, out of, or in relation to or in connection with this agreement or any modification thereof shall be settled by arbitration.” In pursuance of this clause, the buyer initiated an arbitration proceeding. Presented to me for determination is the seller’s application for a stay of the arbitration, or, in the alternative, that a trial by jury be had of the alleged preliminary issues as to whether or not the parties entered into an enforcible contract and whether it was duly rescinded.
The seller claims, first, that the writing containing the arbitration clause is, as a matter of law, not a binding agreement because it was conditional upon the later fixation of the cost of shipping; second, that the required letter of credit had not been established by the buyer and the contract did not come into effect; and third, that in any event the seller had cancelled the purported agreement because of this latter nonperformance by *517 the buyer. On the other hand, it is the buyer’s contention that a contract was made; that its principal elements were an obligation of the seller to deliver and an obligation of the buyer to accept and pay; that the contract remained f.o.b. Japan and that the seller had a commitment of the buyer — regardless of freight cost — to be reimbursed; and that the provisions concerning the freight rate and the establishment of the letter of credit did not make time of the essence. The buyer urges further that in order for the seller to sustain its application it must demonstrate that the entire contract of May 13, 1955, including the arbitration clause, never came into existence, and that the seller cannot rely on its own rescission by reason of the seller’s claim of nonperformance on the part of the buyer. I agree in the main with the contentions of the buyer respondent, and therefore the seller petitioner’s application for a stay of the arbitration or for a trial of the preliminary issues stated is in all respects denied.
The making of the agreement set out in the May 13 confirmation is admitted; there is here no actual dispute as to the paper-writing making up the contract (Matter of Arcola Fabrics Corp. [Alco Blouse Co.], 274 App. Div. 431). In the circumstances, the applicable axiom is that, in a proceeding to compel or stay arbitration, the court may inquire only as to whether there was a contract in existence and a refusal to comply with the arbitration provisions therein (Matter of Minkin [Halperin], 279 App. Div. 226, affd. 304 N. Y. 617).
I am of the view that the confirmation is a binding contract, and that the issue of judicial — as distinguished from arbitral — construction of the agreement is not involved. The indicated approval of the charges for freight and the establishment of the letter of credit within three banking days, as stated in the confirmation, are not expressed as conditions precedent to the coming into existence of the contract. The minds of the parties had clearly met on the essential terms. Even if there were anything conditional about the approval of freight rates and the opening of credit, the conditions as expressed would not go to the existence of a contract, but rather to an excuse for nonperformance or to the right to rescind — and that (under the arbitration clause here) would be the subject of litigation before the arbitration tribunal. As there has here been a binding contract calling for arbitration of all controversies, any question of performance or compliance with its terms affects the merits and is to be decided by the arbitrators. In other words, all acts subsequent to the making of the agreement which raise *518 issues of fact or of law are within the arbitrators’ jurisdiction (Matter of Compagnie Francaise des Petroles [Pantepec Oil Co.], 279 App. Div. 851, affd. 305 N. Y. 588). “ It is to be noted that * * * the statute [Civ. Prac. Act, § 1450] only requires the contract to have been made and does not require that it shall continue to be in existence ” (Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76, 80).
Order signed.