Matthew M. Levy, J.
(Opinion dated November 27, 1959, in the first above-entitled arbitration proceeding.)
Lillian Wasserman, the respondent herein, has proposed for arbitration “ [a] recomputation of the net worth of the [subject] corporation for the purpose of a reevaluation of the closing price, for the purchase of stock from the Estate of Otto Knopf by Lillian Wasserman the purchaser thereof”. The petitioners (who are the executors of Knopf’s estate) move that the arbitration demanded by the respondent ‘1 be permanently stayed on the ground that the question and claim submitted by respondent in her Demand for Arbitration are not referable to the agreement of January 23, 1958 mentioned in the said Demand and there is no issue to arbitrate.” (The petitioners also request that there be “an immediate trial of the issue as to the validity of the submission ”. The meaning of this latter request is not at all clear to me since, as the matter is presented by the petitioners, there is only a question of law, that is, whether, under the contract, there is an arbitrable issue.) The respondent, by cross motion, moves for an order directing arbitration, and, by like cross motion, moves for dismissal of the petition for legal insufficiency.
The underlying agreement between Knopf (now deceased) and Wasserman (the respondent) was made on January 23, Í958. They were the sole stockholders of the corporation. The respondent undertook in that agreement, upon Knopf’s demise, to purchase, and Knopf (on behalf of his estate) undertook to sell, his stock in the corporation. The method of fixing the price was set forth in paragraph Fourth-A of the agreement. A balance sheet and financial statement were to be prepared by the corporation’s regular accountant and to be certified by him. This report was to be submitted to the corporation and to the stockholders as soon as practicable and was to be deemed to be binding and conclusive upon both parties ‘ ‘ unless [as provided *440 in paragraph Fourth-B of the agreement] either party shall have filed with the Corporation, within twenty (20) days after the submission of the statement, written objections thereto specifying in what particulars the account is incorrect or improper. In the event of a dispute which is not amicably resolved, the question of value shall be submitted to arbitration as herein provided ’ ’. Paragraph Tenth of the agreement provided for the arbitration of controversies in language all inclusive (Civ. Prac. Act, § 1448).
It appears that, upon Knopf’s death early in January, 1959, a copy of the financial report, dated February 14, 1959, as of December 31, 1958, duly certified by the corporation’s accountant, was furnished to the respondent, who admits its receipt on March 9, 1959, and admits further that she raised no objection thereto. On March 16, 1959, the price was agreed upon, and the sale was closed by written agreement of that date, executed by the sellers and the purchaser. I hold that what the purchaser did here disposed of her right, subsequently claimed, to determine value by means of the arbitration machinery set up in the underlying agreement.
While the closing agreement of March 16, 1959, occurred less than 20 days from receipt of the financial statement on March 9, the respondent herself entered into that closing arrangement, and she may not rely, therefore, upon the fact of the early closing as excuse for failure to take objection to the elements contained in the financial statement from which flowed the price as fixed on the closing. Obviously, more than 20 days have already elapsed since March 9,1959, and thus the specific dispute as to value, referred to in paragraph Fourth-B, did not ripen into an arbitrable issue and could not fall under the arbitration provision contained in paragraph Tenth. As a result, the financial statement, under the very terms of paragraph Fourth-B, became binding and conclusive. In consequence, the motion of the petitioners-executors is granted staying arbitration, and the cross motion of the respondent for an order directing arbitration is denied.
There remains for consideration the cross motion of the respondent for dismissal of the petition of the executors, based on the contention that what the executors are seeking by their motion is a permanent injunction and that this can be secured only in a plenary suit. Regardless of the language used in the initiating order to show cause, what the petitioners have in substance done is to move under the Arbitration Act (Civ. Prac. Act, art. 84) for a stay of arbitration, following a demand for *441 arbitration by the respondent, and they have so moved upon the ground as urged that there is no arbitrable issue and that, therefore, the petitioners should not be required to proceed to arbitration and that arbitration should accordingly be stayed. The granting of that relief is not limited to the court’s equitable jurisdiction as exercised in a plenary suit. It is within the court’s competence thus to stay the legally uncalled-for arbitration in this special proceeding. The respondent’s motion for dismissal of the petition on the ground of alleged insufficiency is therefore denied.
Settle order. It is to be noted here that, in order to avoid the necessity of having duplication of the papers presented on these and companion applications, I directed, on the argument, that the several motions and cross motions be consolidated. Recital thereof should be made accordingly in the order to be presented for entry.
(Opinion dated November 27, 1959, in the plenary suit.)
The principal crucial facts are stated in my opinion on a companion motion, and need not be restated here. I should, however, add that 200 was the total number of corporate shares issued and outstanding, of which 154 were owned by Knopf, the defendants’ testator, and 46 by Wasserman, the plaintiff, and that such stock ownership was the same at the time of Knopf’s demise and at the time of the sale and purchase agreement between the defendants and the plaintiff in March, 1959. Upon execution thereof, and in accordance with its terms, the plaintiff purchased the 154 shares for an agreed price, paid part of the price on account, and the defendants retained the stock as security for the payment of the balance.
In this action, which is for injunctive relief solely, the plaintiff moves, pendente lite, to restrain disposition of the shares sold by the defendant estate to the plaintiff, and to enjoin the exercise of any rights by the defendant estate based upon that stock, held by it as security for the payment of the balance of the purchase price and upon any declared default in the payment thereof. The core of the plaintiff’s grievance is that she was led to agree to pay too much for the stock she purchased. The defendants cross-move for dismissal of the complaint for legal insufficiency.
Insofar as the alleged lack of mutuality of obligation is concerned in the stockholders’ agreement of January, 1958 — *442 wherein the plaintiff agreed to buy Knopf’s stockholdings upon his demise, but there was no correlative obligation upon his part to purchase her shares in the event she predeceased him — it appears that the agreement altogether was made because, at the time, Knopf, now deceased, was suffering from a heart ailment, and undoubtedly it was principally for this reason that the agreement specifically provided for the purchase by the plaintiff of the stock of that shareholder upon his death, and did not also provide for similar arrangements in case it was the plaintiff who died first. For the purposes of the present motion, at least, it certainly seems that the plaintiff knew all of the underlying facts when she entered into the fundamental agreement of January, 1958.
It is also alleged in the supporting papers that, in a number of specific instances, there was overreaching, error, miscalculation, fraud or improper accounting practice — or all of them together — in connection with the financial statement, prepared by the corporation’s accountant and furnished the plaintiff as the basis for the determination of the price which she agreed to pay for stock in the closing agreement of March, 1959. The position of this plaintiff in the business of the corporation before, and certainly after, the making of the basic stockholders’ agreement of January, 1958, must be deemed to have enabled her — at any rate, for the purposes of this motion — to become completely familiarized with all of the affairs of the corporation prior to the transaction of purchase more than a year later. And, moreover, the facts and circumstances relied on by the plaintiff in connection with the alleged instances of mishandling are so fully controverted as to require a denial of the plaintiff’s motion for a temporary injunction.
In any case, the plaintiff does not plead a cause of action. By her complaint, the plaintiff seeks a permanent injunction that is neither more nor less than the relief sought by the motion for a temporary injunction — restraining the disposition of the stock she bought from the estate and which she redelivered to the defendants as security for the balance of the unpaid purchase price, restraining stockholders’ meetings and voting these shares, doing anything which would interfere with the plaintiff’s operation of the corporate business, and doing anything to interfere with the status quo of the corporation.
While it may, for other reasons, be desirable that the status quo be maintained, that cannot be done through the vehicle of an action which leaves totally unresolved the basic dispute on the claim of right which the plaintiff asserts. An injunction is *443 a provisional remedy only and cannot be obtained in a vacuum. That is the crucial defect in the plaintiff’s cause as pleaded. If the plaintiff were entitled to injunctive relief, temporary or permanent, it would be incidental only to the establishing of the legal rights and relations between the parties arising out of the basic agreement, which forms no part of the action as alleged or the prayer for relief. The plaintiff speaks fully of her alleged grievances. But she neither seeks the rescission of the contract nor the recovery of damages for its breach or for fraud in its negotiation or consummation.
At times, a party suing for basic relief obtains a provisional remedy which stands, even when the action is stayed. That is not this case. The provisional remedy of permanent injunctive relief is not grantable here, as the complaint does not state a cause of action. Indeed, on the facts presented, the plaintiff cannot successfully ask for basic relief in respect of the sales price of her stock as long as 'the January, 1958, stockholders’ agreement exists, because any relief in that regard to which she might be entitled must, pursuant to the agreement, come by way of the machinery of arbitration; and, as I have held in the related proceeding hereinbefore referred to, she has lost her opportunity to assert the right to arbitrate. The result necessarily follows- that she does not now have the right to invoke the jurisdiction of the courts to air any grievance she may have in respect of the purchase price (Matter of River Brand Rice Mills v. Latrobe Brewing Co., 305 N. Y. 36).
Accordingly, the plaintiff’s motion for an injunction pendente lite is denied, and the defendants’ cross motion to dismiss the complaint for insufficiency is granted, with leave to replead if so advised within 20 days after the service of a copy of this order, with notice of entry.
(Opinion dated January 4, 1960, on reargument of both of the proceedings and the plenary suit.)
Wasserman applies for leave to reargue the several motions giving rise to my decisions in these matters on November 27, 1959. Such leave is granted, but my determinations remain unchanged.
The applicant asserts that I overlooked Matter of Tuttman (274 App. Div. 395) and Matter of Raphael (274 App. Div. 625), which cites and follows the Tuttman case. I was not unaware of the basic holding of these authorities (see Matter of Gera Fabrics Division [Liberty Fabrics of N. Y.], 14 Misc 2d 489, *444 490), but, since the cases were not cited by counsel on the original submissions and since, in my view, they were inapplicable, I saw no need to discuss them in the opinions I then rendered. In the light, however, of the contentions now so vigorously pressed by the movant, I have restudied these cases.
1 have again come to the conclusion that they are not in point under the facts in the case at bar, but I have decided to undertake to say why I think so.
In Tuttman and in Raphael the court had before it contract clauses specifying time limitations for the presentation of claims after receipt of merchandise sold. In one case, there was a provision that “ [a] 11 claims are to be made within 10 days of receipt of goods and no claims or allowances can be made after the goods is [sic] cut or converted.” (Matter of Tuttman, supra, p. 395.) In the other, the contract provided that “ [a] 11 claims must be made within 10 days. No claims allowed after goods are cut.” (Matter of Raphael, supra, p. 626.) It was held that such provisions are not to be treated as statutes of limitation for the institution of arbitration proceedings. In the instant case, I did not hold otherwise. There was before me a relevant contractual clause and an important fact not present in the cases now relied upon by the applicant.
The clause here provided, among other things, that the financial statement submitted by the accountant to the corporation “ shall be deemed to be binding and conclusive upon both parties, unless either party shall have filed with the Corporation, within twenty (20) days after the submission of the statement, written objections thereto specifying in what particulars the account is incorrect or improper. In the event of a dispute which is not amicably resolved, the question of value shall be submitted to arbitration as herein provided.” (Italics supplied.)
It is usually true, as contended by the applicant, that the determination of issues arising from facts occurring after the making of a contract providing for arbitration of disputes is for the arbitrators (Matter of Potter Co. [Miles Metal Corp.], 2 Misc 2d 515, 517-518, affd. 2 A D 2d 816). But it is equally true that it is only when it is first found by the court that a contract of arbitration has been made “ covering the question sought to be included in tire arbitration ’ ’ that the court will order the parties to the contract to proceed with the arbitration in accordance with the terms thereof (Matter of Bullard [Grace Co.], 240 N. Y. 388, 395). Where, therefore, as in the case at bar, the contract specifically provides that an unobjected-to financial statement shall 11 be binding and conclusive upon both *445 parties ”, the general clause providing for arbitration should be taken to be modified accordingly. For the proviso referred to must mean something — indeed, in my view, it means exactly what it says. If the arbitral tribunal is held to have jurisdiction, it may assume to say that the clause means something else*. I hold, therefore, that the contract does not cover the question sought to be included in the arbitration.
‘ ‘ Whether or not a bona fide dispute exists is a question of law ” (Matter of General Elec. Co. [United Electrical, Radio & Mach. Workers of America, C. I. O.], 300 N. Y. 262, 264). That principle points up the crucial fact to which I referred, that is, that, after the receipt of the financial statement, not only did neither party object to it, but both parties affirmatively agreed to and accepted it. What I held in that respect was (1) that, in consequence, either there was no “dispute” or that the dispute, if any, was “ amicably resolved ”, and that, therefore, by the very terms of the contract itself, there was no right to invoke the general arbitration machinery set up in the contract; and (2) that - the circumstance that the closing agreement between the parties was entered into during the 20-day contractual period for the interposition of objections to the accounting does not avoid the legal effect which that closing agreement has upon the earlier contract providing for arbitration.
Had the parties in Tuttman and Raphael resolved their disputes by way of written agreements which were not sought to be set aside, there is no doubt in my mind that the amounts agreed upon in such settlements could not later be validly claimed to be subject to the general arbitral machinery set up in the original contracts. Similarly, here, Wasserman does not seek to set aside the closing agreement which she made; she attacks one phase of it and invokes the earlier general arbitration machinery to resolve the asserted issue. That, I held, and continue to hold, is impermissible.
What Wasserman argues in effect is that, if parties have contracted to submit to arbitration a question that may arise between them, they cannot enter into a final binding agreement disposing of it. That is not the law as expounded in the Tuttman or Raphael cases, and that is not the law as I understand it or believe it should be. If controversies subject to judicial arbitrament may be settled by agreement, there is no *446 reason why differences subject to commercial arbitration may not also be similarly settled. If it were held otherwise, we would reach the questionable result that arbitrable disputes could not be composed amicably between the parties themselves. True, the law now favors the arbitration, rather than the litigation, of a controversy. But it is also true that the law has always favored settlement, rather than adjudication. Taking these maxims together, it cannot logically be said that the law looks with disfavor upon the settlement of a controversy rather than upon its arbitration.

 “ Parties who submit to arbitration submit all issues of fact and law including the interpretation of the terms of the contract.” (Matter of Samuel Adler, Inc. [Local 584, etc.], 282 App. Div. 142, 143.)