287 F.2d 382
 METRO INDUSTRIAL PAINTING CORP. and Max Gerben, Joan Gerben
and Leo Gerben, doing business as gerben
Contracting Company, Petitioners-Appellees,
v.
TERMINAL CONSTRUCTION CO., Inc., and Frouge Construction
Co., Inc., Respondents-Appellants.
 No. 48, Docket 26178.
 United States Court of Appeals Second Circuit.
 Submitted Dec. 12, 1960.
Decided Feb. 16, 1961.
 
 M. Carl Levine, Morgulas & Foreman, New York City (David Morgulas and Jerrold Morgulas, of Counsel), New York City, for petitioners-appellees.
 Raphael, Searles, Levin & Vischi, New York City (Sidney O. Raphael and Leo M. Drachsler, New York City, of Counsel), for respondents-appellants.
 Before LUMBARD, Chief Judge, and SWAN and MOORE, Circuit Judges.
 LEONARD P. MOORE, Circuit Judge.
 
 
 1
 This is an appeal from an order granting petitioners-appellees' motion to compel arbitration pursuant to Section 4 of the United States, Arbitration Act, 9 U.S.C. 4 (the Act), and denying respondents-appellants' cross-motion to stay arbitration and to dismiss the petition.
 
 
 2
 Prior to May 26, 1958, respondents Frouge Construction Co., Inc. (Frouge), a Connecticut corporation, and Terminal Construction Corp. (Terminal), a New Jersey corporation, both authorized to do business within the State of New York, and both doing business under the joint venture name of Terminal-Frouge, entered into a contract with the United States of America for the construction of a housing project at the Homestead Air Force Base, Homestead, Florida. On May 26, 1958, Terminal-Frouge entered into a subcontract in New York City with petitioners Metro Industrial Planning Corp. (Metro), a New York corporation, and Max Gerben, Joan Gerben and Leo Gerben, a co-partnership doing business under the name of Gerben Contracting Company, all of whose members are citizens and residents of New York. Under this subcontract petitioners were to perform certain painting work at the Homestead construction site. Included in the agreement was the arbitraction clause in issue.[1]
 
 
 3
 Petitioners allege that they fully performed all terms and conditions of the agreement but that they were required to incur expenses in excess of $200,000 because of respondents' delay in providing the number of units to be painted and because they were compelled to do certain painting work in addition to that required by the contract. Respondents refused to arbitrate these claims. Petitioners thereupon moved relief under Section 4 of the Act.
 
 
 4
 On appeal from the order compelling arbitration, respondents argue that the court below erred in holding (1) that there was diversity of citizenship between petitioners and Frouge; (2) that the contract between the parties 'evidenced a transaction involving commerce'; (3) that federal law was controlling on the issue of arbitrability; and (4) that the disputes over delays and extras were arbitrable under the contract.
 
 
 5
 ( 1) As the court below correctly recognized, the federal courts do not have jurisdiction under Section 4 of the Act unless there exists, apart from the Act, an independent basis of federal jurisdiction. See Krauss Bros. Lumber Co. v. Louis Bossert & Sons, Inc., 2 Cir., 1933, 62 F.2d 1004; Robert Lawrence Co. v. Devonshire Fabrics, Inc., 2 Cir., 1959, 271 F.2d 402, certiorari granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, certiorari dismissed pursuant to stipulation, 1960, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37. Respondents contend that the court below erred in finding the requisite diversity of citizenship since petitioners are all New York citizens and respondent Frouge, although a Connecticut corporation, has its principal place of business in New York, and is therefore, by virtue of 28 U.S.C. 1332(c), deemed to be a citizen of New York. We find sufficient evidence, however, to support the finding below that petitioners met their burden of establishing that Frouge's principal place of business was Connecticut and not New York. The affidavits filed by the parties establish, inter alia, that Frouge owned a two-story building in Connecticut; that clerical, bookkeeping and administrative work was done in Connecticut; and that Frouge's own letterhead referred to the Connecticut building as its 'main office.'
 
 
 6
 ( 2) Respondents correctly assert that diversity of citizenship alone was not enough to empower the court below to compel arbitration under Section 4 of the Act, and that, in addition, the contract in which the arbitration clause is included must be one 'evidencing a transaction involving commerce' within the meaning of Sections 1 and 2 of the Act. Robert Lawrence Co. v. Devonshire Fabrice Inc., supra; see Bernhardt v. polygraphic Co. of America, 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199. Irrespective of whether Congress intended the coverage of the Act to be as broad as the constitutional dimensions of the commerce power, the facts found by the judge below are sufficient to support a finding that the transaction evidence by the contract was within the statutory requirements of the Arbitration Act. It is true that the actual painting work was to be done within the confines of one state (Florida). However, as the trial judge correctly found, many other interstate elements were involved in the performance of this contract. For example, twenty per cent of Metro's work force at the Florida site, as well as a substantial number of supervisory personnel, were transported from New York City to Florida; and materials used by Metro's employees were purchased from other states, as were materials used by other subcontractors, many of whom were also from out of state. The transaction evidenced by the contract thus clearly involved commerce. See International Broth. of Elec. Workers v. N. L. R. B., 1951, 341 U.S. 694, 699, 71 S.Ct. 954, 95 L.Ed. 1299; Del E. Webb Const. Co. v. N. L. R. B., 8 Cir., 1952, 196 F.2d 841, 843.
 
 
 7
 ( 3) Respondents next argue (a) that the Act does not apply because, according to Bernhardt, supra, it can never be applied in diversity cases, and (b) that even if the Act does apply, local law is controlling on the issue of arbitrability. Both of these contentions flow from respondents' apparent misunderstanding of our decision in Robert T. Lawrence v. Devonshire Fabrics, Inc., supra. In that case this court noted that the constitutional problems raised by applying tha Act in diversity cases only become operative if the Act is regarded as procedural in scope, and that since Congress, drawing upon its commerce powers, created in Section 2 of the Act a rule of substantive law declaring certain arbitration agreements 'valid, irrevocalbe, and enforceable,' the Act could constitutionally be applied in diversity cases when the requisite commerce elements are present. Moreover, contrary to respondents' contention, Devonshire held that federal rather than local law governs 'questions of interpretation and construction as well as questions of validity, revocability and enforceability of arbitration agreements affecting interstate commerce * * * since these two types of legal questions are inextricably intertwined.' 271 F.2d 402, at page 409. The issue of arbitrability, i.e., whether a particular dispute is covered by an arbitration clause, being a question of 'interpretation and construction,' the court below was correct in not considering state cases as being binding authority, and in determining the issue according to the 'liberal' policy recognized in Devonshire.
 
 
 8
 ( 4) Finally, we find no error in the trial court's conclusion that the disputes are appropriate for arbitration under the contract. The arbitration clause therein requires the parties to submit 'any question with respect to performance, non-performance, default, compliance or non-compliance, whether on behalf of the Contractor or Subcontractor' to arbitration. The grievance asserted by petitioners is that respondents failed to meet time schedules, insisted upon performance of duties not required of petitioners under the contract and failed to supply materials for petitioners. In view of the federal policy to construe liberally arbitration clauses, to find that they cover disputes reasonably contemplated by this language, and to resolve doubts in favor of arbitration (see Devonshire, supra, 271 F.2d at page 410; Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 1934, 293 U.S. 449, 453, 55 S.Ct. 313, 79 L.Ed. 583), it is clear that these disputes can reasonably be said to fall within the category of compliance or non-compliance.
 
 
 9
 Affirmed.
 
 
 10
 LUMBARD, Chief Judge (concurring).
 
 
 11
 This case once again raises the difficult issues recently considered by this court in Robert Lawrence Co. v. Devonshire Fabrics, Inc., 2d Cir., 1959, 271 F.2d 402, certiorari granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, certiorari dismissed pursuant to stipulation, 1960, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37. I concur fully in the disposition which the majority makes of this case, but state my reasons separatly since one of the issues involves the significant question as to the scope of federal federal law and its effect on state courts.
 
 
 12
 We decided in the Lawrence case that the Arbitration Act passed in 1925 by a Congress which had no reason to foresee the decisions of the Supreme Court in Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and Bernhardt v. Polygraphic Co., 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199, involved an exercise not only of the constitutional power to control procedures in the federal courts but also of the authority constitutionally delegated to Congress to regulate interstate commerce and maritime transactiona. This decision was not prompted merely by a desire to salvage the Arbitration Act so that it might apply in diversity cases when the Erie doctrine would usually compel recourse to state law; it was based on a conclusion regarding the intent of Congress as culled from the legislative history of the Arbitration Act. The report submitted by the committee of the House of Representatives which drew up the law expressly found authority for its enactment in the power over federal-court procedures granted to Congress by Article III, 1 of the Constitution and the substantive powers of Article I, 8 (interstate commerce) and Article III, 2 (admiralty).[1] Since the Act could not stand after the Supreme Court decision in Bernhardt v. Polygraphic Co., supra, as an exercise of the power to control procedures in the federal courts, the alternative basis of legislative authority became the sole ground for invoking the Act in diversity cases. If it is an exercise of the commerce and admiralty powers, the Act must apply not only to litigation in the federal courts but to suits in state courts as well.
 
 
 13
 We further held, in Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra, that 2 of the Arbitration Act did not merely render arbitration clauses in interstate commerce and admiralty contracts valid irrevocable, and enforceable in federal and state courts regardless of state law, but that it also empowered the courts to develop a substantive body of federal law with regard to the interpretation and construction of such clauses. Irrespective of state court decisions regarding the construction of arbitration clauses, all such clauses in contracts coming within the scope of the act must be interprected in the light of federal decisional law.
 
 
 14
 It is most important, therefore, to define precisel what the limits of the federal law are, since state courts will, in all probability, turn to federal decisions to learn when it is that local law must give way under the Supremacy Clause of the Federal Constitution, art. 6.
 
 
 15
 Section 2 of the Arbitration Act specifies that it should apply to any written provision in 'any maritime transaction' or in ' a contract evidencing a transaction involving commerce.' The issue in this case is whether, on the facts before us, the contract to paint buildings in Florida was one 'evidencing a transaction involving commerce.'
 
 
 16
 Notwithstanding the finding in Lawrence that 'Congress intended to use to the fullest possible extent its powers to regulate commerce as it was affected by arbitration agreements,' the legislative history of the Arbitration Act of 1925 reveals little awareness on the part of Congress that state law might be affected. See Note, 69 Yale L.J. 847, 863 (1960). Having no clear mandate from Congress as to the extent to which state statutes and decisions are to be supreseded, we must be cautious in construing the act lest we excessively encroach on the powers which Congressional policy, if not the Constitution, would reserve to the states. It may be a close constitutional question indeed whether Congress could regulate arbitration provisions in all contracts 'affecting commerce' or between persons 'engaged in commerce' as these phrases have been defined by countless cases under the National Labor Relations Act, 10(a), 29 U.S.CA. 160(a), or the Fair Labor Standerds Act, 6(a), 7(a), 29 U.S.C.A. 206(a), 207(a). See e. g. Mitchell v. H. B. Zachry Co., 1960, 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753, and cases there cited. The majority in this case does not suggest that the Arbitration Act be read so broadly. Judge Moore finds however, that the quantity of interstate commerce actually engaged in was sufficient to bring the contract before us within the area which Congress wished to affect. I agree, but my conclusion is based not on what in fact happened, but on that was in the contemplation of the parties as manifested in their written agreement.
 
 
 17
 The language of 2 of the Arbitration Act might suggest that the test to be applied is a formalistic one. The statute does not purport to affect arbitration provisions in all contracts involving commerce; it puts its stamp only on such provisions when incorporated in contracts evidencing a transaction involving commerce. Were it not for the broad remedial purpose of the statute and for contrary indications in the legislative history,[2] we might be justified in limiting the effect of the act to only those contracts which, on their face, reveal that some interstate transaction is to take place. In view of the decision in the Lawrence case, the advantage of such a rule would be that it would restict the number of cases in which federal rules concerning the interpretation of arbitration clauses would be imposed upon essentially local transactions.
 
 
 18
 Even presuming that Erie and Bernhardt could have been anticipated, howver, it is unlikely thatCongress would have wished so to limit the effect of the act. Contracts of parties unaware of the judicially pronounced rule might then fall outside the scope of the act although the activity demanded by these contracts might involve substantial interstate traffic. The rule of construction should be based on some more realistic appraisal of the ends Congress wished to serve.
 
 
 19
 In enacting the Arbitration Act, unlike various other statutes invoking the interstate commerce power, Congress was not seeking to regulate and control activity affecting commerce, but was providing for those engaged in interstate transactions an expeditious extra-judicial process for settling disputes. The Arbitration Act may be avoided entirely by those engaged in interstate traffic if they merely refrain from including any arbitration provisions in their contracts. The Congressional intent was not, therefore, to impose an adjudicative system on those who wished none nor was the intent to affect all contracts possessing certain interstate elements; the purpose of the act was to assure those who desired arbitration and whose contracts related to interstate commerce that their expectations would not be undermined by federal judges, or, since the clarification in Lawrence, by state courts or legislatures. See American Airlines, inc. v. Louisville & Jefferson County Air Board, 6 Cir., 1959, 269 F.2d 811.
 
 
 20
 The significant question, therefore, is not whether, in carrying out the terms of the contract, the parties did cross state lines, but whether, at the time they entered into it and accepted the arbitration clause, they contemplated substantial interstate activity. Cogent evidence regarding their state of mind at the time would be the terms of the contract, and if it, on its face, evidences interstate traffic, such as did the shipment from New York to Massachusetts in the Lawrence case, the contract should come within 2. In addition, evidence as to how the parties expected the contract to be performed and how it was performed is relevant to whether substantial interstate activity was contemplated.
 
 
 21
 In this case, at the very top of the written contract between the parties was the following designation:
 
 Name of Job
 Armed Services Housing Project
 Homestead Air Force Base
 Homestead, Florida
 
 22
 The body of the contract named one of the subcontractors as 'Metro Industrial Painting Corp. of 404 Exterior Street, Borough of Manhattan, New York, New York.' When taken together with the uncontradicted statement in the affidavit submitted by the President of the Metro Corporation that at least 20% Of the men working on the project were transported from New York to Florida, and that the main supervisory forces were from New York, it appears reasonably clear that the parties anticipated substantial interstate traffic. The trips made by supervisors must have been foreseen, as well as the interstate transportation of some of the working force to Florida. The contract was, therefore, one 'evidencing a transaction involving commerce,' it came within 2 of the Arbitration Act, and federal law controlled construction of the arbitration clause.[3]
 
 
 23
 The fact that it is necessary for one party to cross state lines in order to fulfill obligations arising out of the contract should not by itself bring the arbitration clause within the reach of the federal statute. See Conley v. San Carlo Opera Co., 2 Cir., 1947, 163 F.2d 310, affirming D.C.S.D.N.Y.1946, 72 F.Supp. 825. The Arbitration Act should apply only when the parties know or have reason to believe that the performance of the contract will require substantial interstate movement. Cf. Tejas Development Co. v. McGough Bros., 5 Cir., 1947, 165 F.2d 276.
 
 
 
 [1]
 'Anything to the contrary notwithstanding in this agreement, it is understood that any questions with respect to performance, non-performance, default, compliance or non-compliance, whether on behalf of the Contractor or the Subcontractor, shall be determined by Sidney O. Raphael and David Morgulas jointly. In the event that the said Sidney O. Raphael and David Morgulas cannot agree as to the aforegoing matters, then and in that event request shall be made of the President of the Bar Association of the City of New York for appointment and/or designation of a third party, who shall then act as sole arbitrator to determine all such matters as to which the said Sindney O. Raphael and David Morgulas cannot agree, and the decision of said third party shall be final and conclusive. This provision shall be final be deemed to supplant and/or modify any provision of this agreement, whether printed or typewritten, which shall in any manner be inconsistent therewith
 'Pending the adjustment of any disputes or differences and the determination thereof either by adjustment or award or otherwise, the job program sahll not be delayed, but all work shall continue pending the determination of such dispute as aformentioned.'
 
 
 [1]
 The House report contained the following language:
 'The matter is properly the subject of Federal action. Whether an agreement for arbitration shall be enforced or not is a question of procedure to be determined by the law court in which the proceeding is brough and not one of substantive law to be determined by the law of the forum in which the contract is made. Before such contracts could be enforced in the Federal courts, therfore, this law is essential. The bill declares that such agreements shall be recognized and enforced by the courts of the United States. The remedy is founded also upon the Federal control over interstate commerce and over admiralty. The control over interstate commerce reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce.' H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924).
 
 
 [2]
 It appears that the language reading 'evidencing a transaction involving' was added to the bill without explanation by a Senate committee, S.Rep. No. 536, 68th Cong., 1st Sess. 1 (1924). The bill had previously read, 'In any maritime transaction or contract or transaction involving commerce.' The committee's intent was apparently to improve the language of the act and not to effect a substantive change
 
 
 [3]
 Even if the contract were not held to be one 'evidencing a transaction involving commerce,' the reference to arbitration would still be proper under New York Civil Practice Act, 1450. Although arbitration is held substantive for Erie purposes, Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, requires us to look to the New York rule on conflict of laws in deciding whether to apply New York or Florida law to the arbitration clause of the contract. New York might under Auten v. Auten, 1954, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246, apply Florida law in interpreting various provisions of the contract before us. But whether a dispute comes within an arbitration clause would, under New York conflicts law, relate to the 'law of remedies,' and the question would be governed by the law of the forum. See Matter of Gantt, 1948, 297 N.Y. 433, 79 NE.2d 815, 818. The Gantt case indicates that arbitration is considered by the New York courts as merely an alternative method of deciding facts, and the reference to arbitration is, therefore, procedural for conflict-of-laws purposes. The clause in this case, under New York decisions, would clearly cover the dispute with regard to delays in performance. See In re Iino Shipbuilding & Engineering Co., 1958, 6 A.D.2d 159, 175 N.Y.S.2d 750; Application of Potter, Sup.Ct. 1956, 2 Misc.2d 515, 149 N.Y.S.2d 641, affirmed 2 A.D.2d 816, 155 N.Y.S.2d 775; Straight Line Foundry & Mach. Corp. v. Wojcik, Sup.Ct.1959, 204 N.Y.S.2d 29; Fabrex Corp. v. Winard Sales Co., Sup.Ct.1950, 23 Misc.2d 26, 200 N.Y.S.2d 278