460 So.2d 948 (1984)
RIVERFRONT PROPERTIES, LTD., d/b/a Wes Ank Properties, Inc., Petitioner,
v.
MAX FACTOR III and M.F. Capital, Ltd., a California Corporation, Respondents.
No. 84-1056.
District Court of Appeal of Florida, Second District.
December 12, 1984.
*949 Brooks P. Hoyt and Ellen J. Neil of Holland & Knight, Tampa, and Mervyn L. Hecht, H. Chester Horn, and Ronald S. Greenfield of Hecht, Diamond & Greenfield, Pacific Palisades, Cal., for petitioner.
A. Dallas Albritton and Randolph W. Deitz of Albritton & Associates, Tampa, for respondents.
BOARDMAN, Acting Chief Judge.
Riverfront Properties petitions this court for the issuance of a writ of certiorari to review the trial court's denial of its motion to dismiss or, in the alternative, motion to stay proceedings pending arbitration. We have certiorari jurisdiction. Fla.R.App.P. 9.030(b)(2)A and 9.100.
The present litigation arose out of the parties' equal ownership of certain real property located on the Hillsborough River in Tampa (the Westbank Property). Respondent Factor became title holder of the property in 1980. By agreement of June 6, 1980, respondents contracted to hold as nominee an undivided 50% interest in the property for a foreign corporation. Petitioner Riverfront acquired this interest by assignment in May 1982.
On November 9, 1982, the parties entered into an agreement providing for use of the Westbank Property as security for a $4,000,000 loan from Exchange Bank and Trust Company (now known as North Carolina National Bank). According to the agreement, respondents were the initiating force in obtaining the loan. Prior to the funding of the loan, petitioner was offered equal participation in the loan proceeds. At the time the November 1982 agreement was drawn up, petitioner did not choose to borrow but wished to reserve its right to do so at a later time. The agreement therefore *950 provided that half of the loan proceeds was to be disbursed immediately to respondents and the other half was to be deposited in a trust account and held available for petitioner at its election. The agreement further provided that each party agreed not to take any action which resulted in an "EVENT OF DEFAULT" under the loan documents, which documents were included within the scope of the November 1982 agreement. The agreement contained the following relevant provisions:
XI. GOVERNING LAW
This November 1982 Agreement shall be construed in accordance with, [sic] and be governed by the laws of the State of California.
XII. ARBITRATION
Any dispute, including any dispute over the validity of or right to rescission of this Agreement, shall be settled by binding arbitration before the American Arbitration Association in Los Angeles County in accordance with the rules of the American Arbitration Association then in effect, and judgment upon an award rendered may be entered in any court having jurisdiction. This provision shall not prohibit either party from obtaining injunctive relief pending arbitration.
Following execution of the November 1982 agreement, respondents executed and delivered to NCNB a promissory note in the amount of $4,000,000 secured by a mortgage on the Westbank Property. Consistent with the November 1982 agreement, loan proceeds in the amount of $2,000,000 were disbursed to respondents at the time of the execution of the note and mortgage. In November 1983, petitioner exercised its option under the agreement and withdrew its share of the loan proceeds held in trust on its behalf.
On February 24, 1984, respondents filed suit in the circuit court of Hillsborough County for the partition and sale of the Westbank Property. Respondents' reason for seeking partition is unclear from the record. Respondents state that partition was sought because the property was purchased in 1980 with the idea of resale for development and, despite numerous offers made to the joint venture, petitioner refused to negotiate in terms of a realistic value. In its motion to dismiss, however, petitioner alleged that this partition suit resulted from a dispute the parties were having over respondents' obligations under the November 1982 agreement.
Petitioner then filed suit in California on March 19, 1984. Petitioner's California complaint contained six causes of action including the following: (1) a count for specific performance in favor of petitioner compelling respondents to refrain from causing any "EVENT OF DEFAULT" under the terms of the loan agreement between respondents and NCNB and requiring respondents to comply with the arbitration provision of the November 1982 agreement; (2) a request for a temporary restraining order, a preliminary injunction, and permanent injunction compelling respondents to take all steps necessary to abate and dismiss the Florida partition action and to resolve any and all disputes concerning the Westbank Property pursuant to the arbitration provision of the November 1982 agreement; (3) a request for a declaration of the rights and obligations of the parties under the November 1982 agreement. Petitioner voluntarily dismissed its California action after the Los Angeles Superior Court denied petitioner's request for a temporary restraining order.
Having dismissed the California action, petitioner, a week later, moved to dismiss respondents' partition suit or, in the alternative, to stay the proceeding pending arbitration. The trial court denied petitioner's motions but ultimately granted petitioner's subsequent request for a stay of the action pending review by this court. Thereafter, petitioner invoked the certiorari jurisdiction of this court.
Petitioner contends that the filing of the partition suit by respondents constitutes an "EVENT OF DEFAULT," and thus a breach of respondents' obligation, under the related loan documents and that the dispute is subject to the arbitration provision *951 of the November 1982 agreement. Petitioner observes that while the Florida courts refuse to enforce arbitration agreements calling for the application of the laws of a foreign jurisdiction, Florida courts do honor and enforce arbitration clauses in contracts covered by the Federal Arbitration Act. According to petitioner, the agreement to arbitrate is enforceable under the Federal Act because the November 1982 agreement is one evidencing a transaction in interstate commerce.
Respondents, on the other hand, deny that certiorari is the appropriate vehicle for review and further deny that arbitration was provided for in this matter. Respondents also argue that the Federal Arbitration Act does not apply to the November 1982 agreement because the agreement does not involve interstate commerce. And, finally, respondents contend that, assuming arguendo that arbitration applied to any part of this controversy, petitioner has waived the right of arbitration due to its failure to file a motion to compel arbitration.
Under the circumstances of this case, we agree with respondents' argument concerning the nonapplicability of the Federal Arbitration Act, and, therefore, we deny the petition.
With regard to their procedural argument, respondents submit that the time, trouble, and expense of participating in an unnecessary trial is not the kind of material injury sufficient to justify this court's certiorari jurisdiction. On the contrary, however, the courts of this state recognize that a petition for writ of certiorari is the appropriate vehicle for review of an interlocutory order denying an application for arbitration. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Westwind Transportation, Inc., 442 So.2d 414 (Fla. 2d DCA 1983); R.W. Roberts Construction Co. v. St. Johns River Water Management District, 423 So.2d 630 (Fla. 5th DCA 1982); Lipton Professional Soccer, Inc. v. Mijatovic, 416 So.2d 1236 (Fla. 1st DCA 1982); Hansen v. Dean Witter Reynolds, Inc., 408 So.2d 658 (Fla. 3d DCA 1982), petition for review denied, 417 So.2d 328 (Fla. 1982); Merrill Lynch, Pierce, Fenner & Smith v. Melamed, 405 So.2d 790 (Fla. 4th DCA 1981); and McAllister v. Giroux, 401 So.2d 908 (Fla. 2d DCA 1981). Indeed, where a valid right of arbitration exists, other courts have held that permitting the parties to litigate the dispute in court instead of proceeding to arbitration constitutes a departure from the essential requirements of law. Paine, Webber, Jackson & Curtis, Inc. v. Lucas, 411 So.2d 1369 (Fla. 5th DCA 1982); Lapidus v. Arlen Beach Condominium Association, 394 So.2d 1102 (Fla. 3d DCA 1981); Vic Potamkin Chevrolet, Inc. v. Bloom, 386 So.2d 286 (Fla. 3d DCA 1980). Therefore, we do not question the propriety of certiorari as the appropriate method of review.
We also do not agree with respondents' assertion that the instant dispute is not subject to arbitration. As previously mentioned, the dispute centers upon whether the filing of the partition suit will result in an "EVENT OF DEFAULT" under the related loan documents, said documents having been incorporated by reference into the November 1982 agreement. While respondents deny that partition would jeopardize petitioner's interest in the Westbank Property, they cannot and indeed do not deny that the obligation to refrain from causing an "EVENT OF DEFAULT" arises from the November 1982 agreement and the related loan documentation. In clear terms, the November 1982 agreement sets out each party's rights vis-a-vis the other with respect to the use of the Westbank Property as security for the loan and it explicitly prohibits any action consistent with an "EVENT OF DEFAULT." Admittedly, the language in the clause providing for arbitration of "any" dispute is broad, but here no broad construction is needed to conclude that the parties intended the instant controversy to be resolved by a forum other than the court system. Our inquiry must stop here, however, because the judicial role in enforcing arbitration agreements is not one of merit review but instead is limited to contract construction *952 to determine whether the dispute in question falls within the scope of the arbitration provision. Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International, 370 U.S. 254, 264, 82 S.Ct. 1346, 1352, 8 L.Ed.2d 474 (1962); Contracting Northwest, Inc. v. City of Fredericksburg, Iowa, 713 F.2d 382 (8th Cir.1983).
We next proceed to the issue of waiver. Florida courts have consistently held that a party's contractual right of arbitration may be waived by active participation in a lawsuit or by taking action inconsistent with that right. Merrill Lynch, Pierce, Fenner & Smith v. Westwind Transportation; Balboa Insurance Co. v. W.G. Mills, Inc., 403 So.2d 1149 (Fla. 2d DCA 1981). Initiating legal action without seeking arbitration acts as a waiver, Seville Condominium $1, Inc. v. Clearwater Development Corp., 340 So.2d 1243 (Fla. 2d DCA 1977), as does filing an answer without asserting the right of arbitration, King v. Thompson & McKinnon, Auchincloss Kohlmeyer, Inc., 352 So.2d 1235 (Fla. 4th DCA 1978). Also, a party who contests the merits of a claim by filing a motion for summary judgment has been held to waive any right to arbitration. Lapidus v. Arlen Beach Condominium Association.
In the instant case we cannot accept respondents' contention that petitioner waived arbitration by instituting the California suit and by failing to specifically demand arbitration. As the record makes clear, petitioner responded to the partition suit by first filing the California action and then filing, in Florida, the motion to dismiss, or in the alternative, motion to stay pending arbitration. A review of the California complaint and the Florida motion reveals that petitioner's sole objective in filing the pleadings was the recognition and judicial enforcement of its right to arbitration. The California complaint requested that the court order respondents to specifically perform their agreement to arbitrate and sought injunctive relief to prevent respondents from further prosecuting the partition action pending arbitration. Similarly, the motion to dismiss did not contest the merits of partition, it merely asked the court to dismiss the cause without prejudice to respondents' reinstituting suit depending on the outcome of arbitration.
Although no motion to compel arbitration was ever filed, the substance of petitioner's pleadings leaves no doubt that petitioner's only response to the partition suit has been to demand its right of arbitration. See Butcher & Singer, Inc. v. Frisch, 433 So.2d 1360 (Fla. 4th DCA 1983); Rinker Portland Cement Corp. v. Seidel, 414 So.2d 629 (Fla. 3d DCA 1982). Therefore, we hold that petitioner did not waive its right to have the dispute submitted to arbitration.
The remaining question for our determination is whether the arbitration provision is enforceable under the Federal Arbitration Act. The applicability of the Federal Act comes into play because, as both parties agree, under Florida law and the Florida Arbitration Code, an otherwise valid arbitration agreement is not enforceable if it incorporates the law of another state.[1]See § 682.02, Fla. Stat. (1983); Damora v. Stresscon International, Inc., 324 So.2d 80 (Fla. 1976); Romar Transports, Ltd. v. Iron & Steel Co. of Trinidad & Tobago, Ltd., 386 So.2d 572 (Fla. 4th DCA 1980); Knight v. H.S. Equities, Inc., 280 So.2d 456 (Fla. 4th DCA 1973). By virtue *953 of the supremacy clause, however, Florida courts must honor arbitration clauses in contracts covered by the Federal Act. Donmoor, Inc. v. Sturtevant, 449 So.2d 869 (Fla. 5th DCA 1984); Butcher & Singer, Inc. v. Frisch; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Melamed. By its terms the Act applies to:
A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the resolution of any contract.
9 U.S.C. § 2 (1947). "`Commerce,' as herein defined, means commerce among the several states or with foreign nations, or in any Territory of the United States or in the District of Columbia... ." 9 U.S.C. § 1.
There is no dearth of case law defining what constitutes a transaction involving commerce.[2] We note with interest that the North Carolina Supreme Court in Burke County Public Schools Board of Education v. Shaver Partnership, 303 N.C. 408, 279 S.E.2d 816 (1981), adopted the approach enunciated by Judge Lumbard concurring in Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382 (2d Cir.1961), cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961):
The significant question therefore [in determining whether a contract evidences a transaction involving commerce], is not whether, in carrying out the terms of the contract, the parties did cross state lines, but whether, at the time they entered into it and accepted the arbitration clause, they contemplated substantial interstate activity. Cogent evidence regarding their state of mind at the time would be the terms of the contract, and if it, on its face, evidences interstate traffic ... the contract should come within § 2. In addition, evidence as to how the parties expected the contract to be performed and how it was performed is relevant to whether substantial interstate activity was contemplated.
287 F.2d at 387.
Applying Judge Lumbard's well-reasoned analysis to the present case, we can only conclude that the November 1982 agreement does not contemplate substantial interstate activity. The agreement shows on its face that it was drawn up in California and the joint venture which owns the Westbank Property is made up of California corporations who were represented by California counsel during the negotiation of the agreement. Because the parties are based in California, all correspondence and communication between them as called for by the agreement must necessarily take place intrastate. Furthermore, Los Angeles has been selected as the place of performance and the agreement is to be construed in accordance with the laws of California. Although the loan was obtained from a Florida lending institution, we find no evidence that the proceeds were used in Florida or any other state. Therefore, we must assume the funds remained in California. *954 Interestingly enough, petitioner has not stated how the parties expected the agreement to be performed nor how it was performed.
Petitioner does argue, however, that the agreement contemplated the use of interstate banking and communication facilities and, therefore, evidences a transaction involving commerce, because it provided for the loan proceeds to be disbursed in California and because it required that interest payments be delivered to NCNB, as well as $300,000 in cash and securities in the event petitioner elected to borrow. While we agree that these terms of the agreement contemplate interstate activity, we simply do not find any other interstate aspects to the performance of this agreement. Therefore, we hold that the November 1982 agreement, considered in its entirety, does not evince the degree of interstate activity necessary to invoke the Federal Arbitration Act.
As a final note, we must mention that the agreement in the instant case differs from the typical contract evidencing a transaction in commerce, such as one for the sale and/or distribution of goods across state lines, see, e.g., Lawson Fabrics, Inc. v. Akzona, Inc., 355 F. Supp. 1146 (S.D.N.Y. 1973), aff'd, 486 F.2d 1394 (2d Cir.1973), or one for the construction of a housing project or shopping center where the materials, labor, and/or potential investors all originate in a place other than where the contract was made or to be performed, see, e.g., Sears Roebuck & Co. v. Glenwal Co., 325 F. Supp. 86 (S.D.N.Y. 1970), aff'd, 442 F.2d 1350 (2d Cir.1971). Having thoroughly examined the agreement, it is clear to us that its primary purpose was the protection of the parties' respective interests in the Westbank Property. Because Congress intended the Federal Act to encompass contracts that merely "relate to interstate commerce" in addition to those whose direct purpose is the interstate shipment of goods and/or materials, etc., see Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), we have applied Judge Lumbard's analysis as means of determining the interstate elements of this agreement.
PETITION FOR WRIT OF CERTIORARI DENIED.
DANAHY and LEHAN, JJ., concur.
NOTES
[1] Arbitration agreements made valid, irrevocable, and enforceable; scope.  Two or more parties may agree in writing to submit to arbitration any controversy existing between them at the time of the agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof. Such agreement or provision shall be valid, enforceable, and irrevocable without regard to the justiciable character of the controversy; provided that this act shall not apply to any such agreement or provision to arbitrate in which it is stipulated that this law shall not apply or to any arbitration or award thereunder.
[2] Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Mediterranean Enter., Inc. v. Ssangyong Corp., 708 F.2d 1458 (9th Cir.1983); American Home Assurance Co. v. Vecco Concrete Co., 629 F.2d 961 (4th Cir.1980); Medical Dev. Corp. v. Indus Molding Corp., 479 F.2d 345 (10th Cir.1973); Varley v. Tarrytown Associates, Inc., 477 F.2d 208 (2d Cir.1973); Metro Indus. Painting Corp. v. Terminal Constr. Co., 287 F.2d 382 (2d Cir.1961), cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); Masthead Mac Drilling Corp. v. Fleck, 549 F. Supp. 854 (S.D.N.Y. 1982); Fox v. Merrill Lynch & Co., 453 F. Supp. 561 (S.D.N.Y. 1978); C.P. Robinson Constr. Co. v. National Corp. for Housing Partnerships, 375 F. Supp. 446 (M.D.N.C. 1974); Burke County Pub. Schools Bd. of Educ. v. Shaver Partnership, 303 N.C. 408, 279 S.E.2d 816 (1981); Cohoon v. Ziman, 60 N.C. App. 226, 298 S.E.2d 729, petition for review denied, 307 N.C. 697, 301 S.E.2d 388 (1983); Miller v. Puritan Fashion Corp., 516 S.W.2d 234 (Tex.Civ.App. 1974); Fite & Warmath Constr. Co. v. MYS Corp., 559 S.W.2d 729 (Ky. 1977); University Casework Sys., Inc. v. Bahre, 172 Ind. App. 624, 362 N.E.2d 155 (1977).