**LAWSON FABRICS, INC., and Lawson International, Ltd., Plaintiffs,**

**v.**

**AKZONA, INCORPORATED, also known As American Enka Company, and Blanchard Yarn Company, Inc., Defendants.**

**No. 72 Civ. 4429.**

United States District Court, S. D. New York.

Feb. 20, 1973.

Kreindler, Relkin, Olick & Goldberg, New York City, for plaintiffs by George E. Goldberg, and Arthur S. Olick, New York City, of counsel.

Hahn, Hessen, Margolis & Ryan, New York City, for defendants by Jules J. L. Hessen, and Melvin Beinart, New York City, of counsel.

DUFFY, District Judge.

Defendants, Akzona, Incorporated (Akzona), also known as American Enka Company, and Blanchard Yarn Company, Inc. (Blanchard) seek a stay of this action pursuant to 9 U.S.C. § 3, pending arbitration between plaintiffs, Lawson Fabrics, Inc. and Lawson International, Ltd. (the Lawsons), and defendant, Blanchard. This action and the arbitration proceeding arose out of the sale of certain textiles. The Lawsons contracted with Blanchard for the delivery of certain specified yarns. A series of more than 90 transactions took place between the parties; ultimately conflict arose, the Lawsons alleging that the goods shipped did not meet the standards of the contract and Blanchard alleging failure of payment. The contracts between the Lawsons and Blanchard contained a general clause wherein both parties agreed to refer to arbitration all controversies arising under or in relation to the contract.

On September 21, 1972, plaintiffs, the Lawsons, filed a "Notice of Intention to and Demand for Arbitration" which started the arbitration procedure. Thereafter, on October 17, 1972, the Lawsons filed the complaint in this action alleging (1) that defendant Blanchard sold yarn whose source was misrepresented and which was falsely described in violation of the Trade-Mark Act of 1946 (the Lanham Act), 15 U.S.C. § 1125; (2) that defendant Blanchard sold misbranded textile fiber products in violation of the Textile Fiber Products Identification Act, 15 U.S.C. § 70a; and of the Federal Trade Commission Act, 15 U.S.C. § 45;[1] (3) that defendant Akzona (not a party to the arbitration but the owner of Blanchard and a fiber producer) induced the commission of the fraud by Blanchard; and (4) that all defendants conspired to defraud

plaintiffs. All of these alleged violations arose out of the transactions in 1970 and 1971 between plaintiffs the Lawsons and defendant Blanchard.

■ A Federal court is empowered under 9 U.S.C. § 3 to stay its proceedings where the issue involved is referrable to arbitration under an agreement to arbitrate found in a contract evincing a transaction in commerce. Commerce is defined in 9 U.S.C. § 1, to mean commerce "among the several states". It is clear that this contract for the sale of goods from a seller in North Carolina to a buyer in New York represents commerce "among the states" in its most basic form, and this Court is therefore empowered to act.

■ At the threshold in deciding whether this action can be stayed, this Court must determine whether the arbitration clause is broad enough to include the claims made by plaintiff. As the Supreme Court said in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S. Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." However, the courts have taken a liberal attitude in interpreting the scope of arbitration clauses. Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382 (2nd Cir. 1961), cert. den., 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961). If the parties manifest an intent to arbitrate all disputes arising out of the contract as they did here, it makes no difference whether or not they were foreseeable at the time of agreement. Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir. 1968).

It seems perfectly evident that issues involving the labelling of textile goods, regardless of whether they are couched

---

[1]. It is not clear that a private action can be brought in Federal District Court under the Federal Trade Commission Act or the Textile Fiber Products Identification Act by a party in the position of the Lawsons. *Cf.* Holloway v. Bristol-Myers Corp., 327 F.Supp. 17 (D.C.D.C.1971), and LaSalle Street Press, Inc. v. McCormick and Henderson, Inc., 293 F.Supp. 1004 (N.D.Ill.1968). However, this Court finds it unnecessary to decide this question.

in Federal statutory terms, arise out of the contract of sale of those goods. For this reason, the Court finds that these claims fall within the ambit of the sweeping arbitration clause in the contract between plaintiffs, the Lawsons, and defendant, Blanchard.

■ However, the Court's inquiry is not at an end. The fact that the claims in this case arise under Federal statutes injects an additional element into the determination of arbitrability and thus also, into the question whether this action can be stayed. In a series of cases in which Federal statutory claims were raised, the Federal courts have held that certain claims could not be deferred from a Federal Court to arbitration though they fell within the scope of 9 U.S.C. § 3. The strong Federal policy in favor of arbitration[2] was held to give way before other Federal policies. In essence, the arbitration clauses were found to be unenforceable, where the statute under which the claim arose had within it language proscribing the waiver of a judicial trial by a party to the case. The landmark decision in this area was Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The Supreme Court determined that the right to select a judicial forum could not be waived, before any controversy arose, by a buyer of securities because of Section 14 of the Securities Act of 1933, 15 U.S.C. § 77a et seq. The Court held that it was the purpose of Section 14 of the statute to prevent buyers from having their rights bargained away from them by large brokers and dealers. Thus, one could not agree to arbitrate future disputes raising Securities Act issues.

Even where statutes were silent on the issue of waiver, the courts found that rights arising under statutes, particularly infused with public interest,
could not be decided by non-judicial forums. The Second Circuit in American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821 (2nd Cir. 1968), held that issues of anti-trust law should not be decided by arbitration. The Court decided that claims under the anti-trust laws are not merely private matters, but involve the national interest in the maintenance of a viable, competitive economy. Such an interest should not be decided by arbitration; a forum less constrained to make a legally correct judgment.

■ None of the three statutes under which plaintiff seeks relief contains an express non-waiver clause. However, whether these statutes are permeated with the kind of public interest found in the Sherman and Clayton Acts, is a difficult and complex question. Fortunately, this Court finds that deciding such a question is unnecessary. Assuming arguendo that these statutes are so infused with public interest as to preclude agreements to arbitrate future controversies, I find that plaintiff agreed to arbitrate not a future controversy but an existing one, which is a recognized exception to the general prohibition against arbitrating such public rights. The opinion of the Supreme Court in Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1957), decided only that a waiver in advance of a controversy was proscribed; the majority opinion did not deal directly with the issue of an agreement to arbitrate an existing controversy except to indicate that it was a different issue. However, in his concurrence, Justice Jackson suggested that it would be permissible to agree upon arbitration after the controversy arose. Subsequently, the lower courts have explicitly carved out this exception. American Safety Equipment v. J. P. Maguire & Co., 391 F.2d 821 (2nd Cir. 1968);

---

2. The Federal courts have been almost universal in casting off their traditional reluctance of arbitration and they have repeatedly deferred to it. Erving v. Virginia Squires Basketball Club, 468 F.2d 1064 (2nd Cir. 1972); South East Atlantic Shipping Limited v. Garnac Grain Company, Inc., 356 F.2d 189 (2nd Cir. 1966); Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 126 F.2d 978 (2nd Cir. 1942).

Reader v. Hirsch & Co., 197 F.Supp. 111 (S.D.N.Y.1961). They have allowed arbitration after a controversy has arisen, regardless of whether the statute has a nonwaiver section or has a strong public interest element. Coenen v. R. W. Pressprich & Co., 453 F.2d 1209 (2nd Cir. 1972), cert. den. 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972), allowed arbitration of an anti-trust claim; Power Replacements, Inc. v. Air Preheater Co., Inc., 426 F.2d 980 (9th Cir. 1970) allowed arbitration of an anti-trust claim; Moran v. Paine, Webber, Jackson & Curtis, 389 F.2d 242 (3rd Cir. 1968) allowed arbitration of claims arising under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. The underlying reasoning of the courts in creating this exception rests on the view that since a party has the power to settle an existing dispute, it follows that a party can agree to arbitrate an existing controversy because it is, in effect, a decision to have the case settled, though by an independent non-legal third party.

Further, the main objection which arises where future controversies are involved, namely, that a party is signing away an unknown claim or right, does not apply. Both parties in this situation have the opportunity to know exactly what they are agreeing to arbitrate, and it is less likely that the respective bargaining positions will be influenced by factors not related to the existing controversy.

The question now becomes, did plaintiff agree to arbitrate this controversy after it came into existence? The facts as set out earlier in this opinion suggest an affirmative answer. Plaintiff, faced with a dispute concerning the nature and quality of goods delivered to him by defendant Blanchard, initiated the arbitration proceeding in this case.

Plaintiff argues that its demand for arbitration cannot possibly represent a waiver of its right to a judicial forum because these Federal statutory issues were not included within the demand. The demand recites the arbitration clause, and goes on to state that plaintiff ordered from defendant quantities of yarn which, when plaintiff delivered them, were not in accordance with contractual descriptions or requirements, and that as a result plaintiff has suffered damage. These allegations that the textiles were misrepresented and misdescribed are also the gravamen of the Federal claims.

The generality of plaintiff's language suffices to sustain a finding that the Federal claims were included. To find the Federal claims were not included within this demand, given the breadth of the arbitration clause, would have required a specific indication in the demand itself that the scope was so limited.

It is suggested that even if the Federal claims are included within the demand, that the demand does not represent a free decision on the part of plaintiff since he was compelled to arbitrate by the clause in the contract. If the demand were coerced, no waiver could be found. However, I find that the existence of the arbitration clause was not sufficiently coercive to negate the request. Plaintiff argues that he had no choice but to demand arbitration since the contract called for all disputes to be arbitrated. However, there were several other choices besides a blanket demand open to plaintiff. Obviously, plaintiff could have sought to narrow his demand for arbitration by limiting the scope so as to expressly not include these statutory claims. Indeed, if plaintiff had wanted to avoid arbitrating these issues, he would have been better advised to have brought the Federal action. Lastly, plaintiff could have forced defendant to bring the arbitration and not have filed for it at all.

Thus we find that this demand was sufficiently without coercion, so as to represent an agreement to arbitrate an existing controversy and that, therefore, the Federal action in this case should be stayed as to defendant Blanchard pending the arbitration determination.

Finally, defendants have sought a stay as to all defendants; however, the Federal action includes Akzona, not a party to the arbitration. The plaintiff argues that the Federal action cannot, therefore, be stayed as to Akzona. A stay of this action vis-a-vis the defendant not a party to the arbitration proceeding, cannot be sustained under 9 U.S.C. § 3 because of the non-identity of the parties in the two proceedings. Nederlandse Erts-Tanker-Smaatsch Appij. N.V. v. Isbrandtsen Co., 339 F.2d 440 (2nd Cir. 1964); Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission, 387 F.2d 768 (3rd Cir. 1967). However, as Mr. Justice Cardozo pointed out in Landis v. North America Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153, the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket. The Second Circuit has laid down the standards for determining the appropriateness of granting a stay in Nederlandse Erts-Tanker-Smaatsch Appij. N.V. v. Isbrandtsen, *supra*, 339 F.2d 440, wherein they suggest that defendant must meet the burden of showing that (1) he will not hinder arbitration; (2) that arbitration will be concluded within a reasonable time; and (3) that delay will not work a hardship. I find that defendant has met this burden and that this is an appropriate situation in which to apply a stay under this Court's inherent equity powers. The additional defendant in this Federal action is the parent of Blanchard, a party to the arbitration. The claims against Akzona basically involve the allegation that it conspired with and encouraged Blanchard to deliver improper, mislabelled goods in order to defraud Lawson. The decision of the arbitration as to whether, in fact, Lawson has been defrauded will inevitably decide whether non-conforming and mislabelled goods were delivered, and thus will at least partially determine the issues which form the basis of the claim against Akzona.

If the arbitration finds no mislabelling or misrepresentation, then the claims of plaintiffs against Akzona will also be repudiated.

Since the arbitration proceedings are in progress, it cannot be argued that there is likely to be an unreasonable delay of this Federal action. If, however, the proceeding should drag on or if defendant should hinder their progress, plaintiffs can make the appropriate request of this Court.

Lastly, we agree with the statement made by Judge Coffin of the First Circuit in Hilti, Inc. v. Oldach, 392 F.2d 368 (1968), where he said,

"If arbitration . . . could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised." 392 F.2d at 369, n. 2.

If this Court were to allow Lawson to prevent the arbitration of these issues by the naming of Akzona as a party to this action, the Federal policy in favor of arbitration would be thwarted. The motion granting the stay of this action as to all parties is granted.

Settle order on notice in accordance with this opinion.