**KAMAKAZI MUSIC CORP., Barry Manilow and Warner Bros. Publications, Inc., Plaintiffs,**

**v.**

**ROBBINS MUSIC CORPORATION and Vicks Lithograph, Inc., Defendants.**

No. 80 Civ. 2877 (RWS).

United States District Court,
S. D. New York.

Aug. 3, 1981.

Bender & Frankel, New York City, for plaintiffs; Sandor Frankel, New York City, of counsel.

Abeles, Clark & Osterberg, New York City, for defendant Robbins Music Corp., Robert C. Osterberg, New York City, of counsel.

Evans, Severn, Bankert & Peet, Utica, N. Y., for defendant Vicks Lithograph Corp.; Philip A. Rayhill, Utica, N. Y., of counsel.

## OPINION

SWEET, District Judge.

This is an action in which injunctive relief and damages were sought for copyright infringement, interference with contractual rights and related violations of state law. The plaintiff Kamakazi Music Corp. ("Kamakazi") has moved pursuant to 9 U.S.C. § 9 (1970) to confirm certain awards of an arbitrator, and defendant Robbins Music Corp. ("Robbins") has cross-moved to vacate those awards. Robbins also moves to dismiss the claim of Kamazaki and plaintiff Warner Brothers Publications, Inc. ("Warner") for tortious interference with contractual rights—the fifth cause of action of Kamakazi and Warner. The motion to con-

firm will be granted in part and denied in part in accordance with this opinion. Robbins' motion to vacate will be denied, and the motion to dismiss the tortious interference claim will be granted.

This arduous litigation arises out of Robbins' printing and selling of the compositions of plaintiff Barry Manilow ("Manilow"), a well-known songwriter and recording artist, in so-called personality folios and other formats allegedly in violation of copyrights owned by Kamakazi and in violation of the interests of Manilow and Warner. The fervor of the litigants is understandable in view of the large profits at stake in the high-volume commerce of popular music and of these copyrights in particular. Manilow is the sole stockholder in Kamakazi. Kamakazi, a New York corporation, apparently is the duly registered owner of the copyrights in musical compositions written in whole or in part by Manilow, who receives percentage royalties from Kamakazi based on sales or license fees. In November, 1976 Kamakazi and Robbins entered into a written license agreement (the "Agreement") with respect to the publication of certain Manilow compositions by Robbins, which provided that Robbins would have the exclusive right to publish and sell those compositions in various forms, including personality folios—printed publications which feature musical compositions by a particular artist, in this case, Manilow. After the alleged expiration of the Agreement, plaintiff Warner was secured by Kamakazi to produce and sell its Manilow compositions and this dispute arose.

Plaintiffs alleged that by the terms of the Agreement, Robbins' right to print and manufacture copies of the compositions in the form of Manilow personality folios would "immediately cease" on December 31, 1979, and, given appropriate notice by Robbins, the right to sell off these folios would continue until July 31, 1980. Robbins alleged that pursuant to paragraph 6 of the Agreement, it had the right to print and manufacture the personality folios until December 31, 1980, and to sell off these folios thereafter. Defendant Vicks Lithograph, Inc., has been printing the Manilow material for Robbins, and presumably was brought into this action by Kamakazi only to enhance the effectiveness of the injunctive relief sought in the complaint.[1]

The complaint was filed on May 19, 1980. Three days later Kamakazi first sought the intercession of the court, seeking a preliminary injunction to bar Robbins from manufacturing and selling copies of the personality folios during the pendency of the action. Robbins cross-moved for dismissal for lack of jurisdiction or alternatively, pursuant to 9 U.S.C. § 3, for a stay of all further proceedings pending arbitration, as provided for in the Agreement.[2] A hearing was

---

1. The complaint alleges several causes of action on behalf of all three plaintiffs against Robbins. The first through fourth causes of action of Kamakazi and Manilow seek damages and an injunction against the manufacture, sale and possession of the alleged infringing compositions. The first through seventh causes of action of Manilow seek damages for violation of New York Civil Rights Law § 51. The first through fourth causes of action of Warner allege the same injury—infringements—and seek the same relief as the first and fourth causes of action of Kamakazi and Manilow. The fifth cause of action of Kamakazi and Warner seeks damages for Robbins' alleged interference with contractual relations. The sixth cause of action of Kamakazi and Warner and the eighth cause of action of Manilow seek punitive damages.

What is delineated as a separate cause of action of all three plaintiffs which alleges that Vicks had been notified of plaintiffs' claim to the copyrights, prays for all the same relief as is granted against Robbins.

In this opinion Kamakazi is referred to as a shorthand for the plaintiffs. This is essentially because the only parties to the arbitration were Kamakazi and Robbins. Similarly, only Robbins is referred to throughout the opinion as a defendant.

2. The Arbitration Clause, paragraph 20 of the Agreement, provides in pertinent part:

[A]ny controversy or claim arising out of, or relating to this agreement or the subject matter thereof, or the breach hereof shall be settled by arbitration in the City of New York in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award rendered may be entered in any Court having jurisdiction thereof.

held and by opinion dated June 5, 1980, the court concluded that the action arose under the copyright laws, and so denied Robbins' motion to dismiss for lack of jurisdiction, but granted Robbins' alternative motion to stay proceedings pending arbitration. Kamakazi's motion for preliminary injunction was denied because of the court's concern that any determination as to the merits of the complaint, a prerequisite to the granting of such relief, would threaten the independence of the arbitral process. The parties were ordered to proceed forthwith to arbitration where, it was anticipated, injunctive relief as well as damages could be granted.

Kamakazi immediately thereafter filed a demand for arbitration and, following some initial difficulties which caused Kamakazi to seek reconsideration of the court's denial of its motion for preliminary injunction,[3] the arbitration went forward. During the course of those proceedings, in November, 1980, Kamakazi once again returned to this court seeking a preliminary injunction, on the basis of certain internal memoranda produced by Robbins in the arbitration which, Kamakazi alleged, evidenced the correctness of Kamakazi's position on the merits of the dispute over the interpretation of the Agreement and Robbins' awareness that its printing and sales of personality folios in 1980 violated the Agreement. For reasons similar to those behind the court's

denial of Kamakazi's original application for injunctive relief, this motion was denied by opinion of December 1, 1980.

Upon a record compiled over some eight months of litigation before the American Arbitration Association ("AAA"), appearing in over 2,000 pages of transcript, the arbitrator rendered a decision on March 6, 1981 (the "March Award"), which is set out in full as Appendix A to this opinion. In essence, the arbitrator vindicated Kamakazi's interpretation of the Agreement and the rights of Robbins upon its termination, concluding that Robbins' printing and sale of Manilow personality folios as well as individual sheet music and individual editions after December 31, 1979 was without license and therefore constituted copyright infringements. Robbins' activities were found to have infringed twenty five separate copyrights of Kamakazi's comprising twelve individual works of Manilow and thirteen so-called compilations or derivative works.[4] Robbins' printing and sale of mixed folios was found to be under license. Acting upon Kamakazi's election of statutory "in lieu" damages under the Copyright Act, 17 U.S.C. § 504(c), the arbitrator found that the Robbins infringements were "willful," and concluded that a "just" recovery for Kamakazi would be $10,000 for all of the multiple infringements of each copy-

---

3. On June 9, 1980, upon oral application, Kamakazi sought such reconsideration alleging, most significantly, that Robbins was disrupting the commencement of arbitration by failing to approve an arbitrator and by a threat to apply in state court for a restraint against the arbitrator's affording preliminary injunctive relief in this dispute. By order of June 11, this court granted the motion to the extent of indicating its willingness to entertain a renewed motion for a determination on the merits with respect to the application for a preliminary injunction unless Robbins commenced participation in the arbitration on the merits by June 16.

Also on June 11, Robbins apparently obtained ex parte in Supreme Court, New York County, a temporary restraint against the arbitrator's granting preliminary injunctive relief to Kamakazi. This restraint apparently remained in effect until December 22, 1980, when the state court denied Robbins' motion for a preliminary injunction.

4. A "compilation" is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works.

A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101.

right,[5] for a total of $250,000, plus costs and reasonable attorney's fees pursuant to 17 U.S.C. § 505. Kamakazi was awarded $250,000 damages in accordance with the foregoing findings, as well as appropriate permanent injunctive relief. Robbins was taxed costs and fees. Robbins' counter-claim, alleging damages to its exclusive sell-off rights under the Agreement, was dismissed. The award of attorney's fees was postponed pending receipt of an affidavit of legal services. On April 7, 1981, in a supplemental award of the arbitrator (the "April Award"), set forth as Appendix B to this opinion, Robbins was assessed $50,-127.72 in legal fees, to be divided between present and previous counsel for Kamakazi.

The instant motions, respectively to confirm and to vacate the awards, and Robbins' motion to dismiss the interference with contract cause of Kamakazi and Warner, followed.[6] Standing alone, Kamakazi's motion to confirm the awards of course requires little discussion, as pursuant to 9 U.S.C. § 9 such an order is routinely granted in the absence of a cross-motion to vacate or modify. It is Robbins' broadside assault on the March and April Awards (collectively the "Awards"), pursuant to 9 U.S.C. § 10, which has required this opinion.

Capsulized, Robbins' position is that pursuant to this court's opinion of June 5, 1980 and the arbitration clause of the Agreement, the arbitrator was given, and accepted, jurisdiction to determine whether or not Robbins' publication and sale of the Manilow compositions in various forms was under license—a matter of interpretation of the Agreement between it and Kamakazi. This, it is submitted, simply involves the application of principles of contract law and, if need be, consideration of evidence as to damages—all under the law of New York. In springing from his interpretation (essentially favorable to Kamakazi) of the Agreement, to the application of the federal copyright laws to find willful infringements (after presuming the validity of the allegedly infringed copyrights) and to the award of statutory damages and attorney's fees, Robbins asserts, the arbitrator exceeded his jurisdiction, violated public policy, and manifestly disregarded the law. Thus, it is argued, pursuant to 9 U.S.C. § 10(d) and the case law, the awards must be vacated.[7] *See e. g., Perma-Line Corp. of America v. Sign Pictorial*, 639 F.2d 890, 895 (2d Cir. 1981); *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211 (2d Cir. 1972).

Kamakazi, in turn, asserts that the arbitrator acted properly under the circumstances and the law to resolve the entire dispute between it and Robbins which was before him. In this regard Kamakazi presses that it was Robbins which successfully urged, over Kamakazi's objection, that the dispute be relegated to arbitration; that, contrary to Robbins' professed view, the nature and scope of the arbitration proceedings was made clear from the outset, when Kamakazi, in its demand for arbitration, characterized the dispute being submitted as "violations by Robbins Music Corporation of copyrights owned by Kamakazi Music Corp." and constantly thereafter; and that it was Robbins, again over Kmakazi's objection, which prevailed in its insistence that the issue of damages—which ultimately occupied a major part of the proceedings—be heard by the arbitrator. Thus, it is asserted, Robbins "jockeyed" the dispute into the

---

**5.** Under the copyright law, the copyright owner may elect at any time before final judgment is rendered, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action with respect to any one work, up to $10,000 as the court considers just. 17 U.S.C. § 504(c)(1).

Where infringements are found to have been committed willfully, the award as to each work can be increased to $50,000. *Id.* § 504(c)(2).

**6.** Additionally, Robbins filed its answer on May 12, 1981, and an amended answer on June 1.

The answer denies all the operative allegations and raises several defenses. The amended answer is identical in all respects with the exception of the addition of four unrelated counterclaims against Warner, which are the subject of a pending motion to dismiss or sever.

**7.** 9 U.S.C. § 10(d) provides that an award may be vacated:

Where the arbitrators exceeded their power, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

forum of its choice, employed various procedural devices and delaying tactics to draw out the arbitration unduly, all the while taking a position with respect to the Agreement which it knew to be meritless, and, having successfully impeded Kamakazi's efforts to obtain preliminary injunctive relief in federal and state court (*see* note 3, *supra*), used that time to continue earning large profits by its allegedly infringing activities. It is suggested by Kamakazi that Robbins got everything it sought before and during arbitration except for a favorable result.

On the entire record before the court, which includes only small segments of the arbitration transcript attached as exhibits to the parties' instant motion papers, Kamakazi's review of events appears to have merit. I conclude as well that Kamakazi's position is basically supported by the law, although the import of actions and positions taken and the conclusions reached at various points in this litigation by the parties, this court and the arbitrator is not as simple as Kamakazi would have it. What presents itself is a web sufficiently tangled to require that certain further steps be taken before the awards as a whole can be confirmed.

The two overriding principles which are posed in this action apparently conflict. First, there is a strong federal policy in favor of the settlement of private disputes by consensual arbitration. This is expressed in several ways, including the mandatory language of 9 U.S.C. § 3 providing for stay of federal court proceedings and referral to arbitration of issues or actions covered by arbitration agreement, the reluctance of federal courts to question the alleged errors of fact or law if the findings and conclusions of the arbitrator are "barely colorable," *Andros Compania Maritima v. Marc Rich & Co., A.G.*, 579 F.2d 691, 704 (2d Cir. 1978); *Sobel v. Hertz, Warner & Co., supra; Refino v. Feuer Transp. Co., Inc.,* 480 F.Supp. 562, 565 & n.3 (S.D.N.Y.1979), *aff'd mem.* 633 F.2d 205 (2d Cir. 1980), and the extremely narrow reading given to the Arbitration Act's authorization to vacate awards where the arbitrator exceeded his

powers, *see John T. Brady & Co. v. Form-Eze Systems, Inc.,* 623 F.2d 261, 264 (2d Cir.), *cert. denied,* 101 S.Ct. 786, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980); *see generally National Bulk Carriers v. Princess Management,* 597 F.2d 819, 825 (2d Cir. 1979); *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1067–68 (2d Cir. 1972).

On the other hand, actions arising under certain federal statutes which provide for exclusive federal court jurisdiction, including antitrust, securities and patent, even if between private parties, are considered to be of public concern, and thus, as a matter of public policy, generally have been held to be not justiciable in state court, or referable to arbitration notwithstanding an agreement between the parties to arbitrate. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1957) (securities laws); *Safety Equipment Corp. v. J. P. McGuire & Co.,* 391 F.2d 821 (2d Cir. 1968) (antitrust laws); *Foster Wheeler Corp. v. Babcock & Wilcox Co.,* 440 F.Supp. 897, 901 (S.D.N.Y.1977) (patent validity); *Diematic Mfg. Corp. v. Packaging Investors, Inc.,* 381 F.Supp. 1057 (S.D.N.Y.1974), *appeal dismissed,* 516 F.2d 975 (2d Cir.), *cert. denied,* 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975) (patent infringement and validity); *see generally Horne v. New England Patriots Football Club, Inc.,* 489 F.Supp. 465 (D.Mass.1980); *Lawson Fabrics, Inc. v. Aksona, Inc.,* 355 F.Supp. 1146, 1149 (S.D.N.Y.), *aff'd mem.* 486 F.2d 1394 (2d Cir. 1973); 4 R. Callman, The Law of Unfair Competition, § 87.1 at 3, n. 1 (3d ed. 1940 and Supp. 1978). While no copyright case directly stating this proposition has been presented to the court or discovered, the patent cases cited above are useful authority for applicability in the related field of copyright. *See Newman v. Crowell,* 205 U.S.P.Q. 517, 519 (S.D.N.Y. 1979); *Stepdesign, Inc. v. Research Media, Inc.,* 442 F.Supp. 32 (S.D.N.Y.1977).

At least as far as patent and copyright law are concerned, often, as here, it is not clear whether an action—typically involving a license agreement and possible infringement or royalties due—"arises under" the relevant statute or is essentially a contract

dispute which "involves" a patent or copyright. *T. B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965); *Stepdesign v. Research Media, Inc., supra; Muse v. Mellin*, 212 F.Supp. 315, 317 (S.D.N.Y.1962), *aff'd*, 339 F.2d 888 (2d Cir. 1964). Both the formal allegations and the substance of the complaint are considered. *Newman v. Crowell, supra*, at 519; *Diematic, supra*, at 1060–61. In this court's opinion of June 5, 1980, it was determined that this action arises under the copyright law, in that the complaint is directed against an offending use, and refers to the license agreement only by way of anticipatory replication. *See T. B. Harms Co. v. Eliscu, supra*, 339 F.2d at 825; *Newman v. Crowell, supra; Harrington v. Mure*, 186 F.Supp. 655, 658 (S.D.N.Y.1960). Such a determination establishes the court's jurisdiction over the subject matter under 28 U.S.C. § 1338,[8] as it did in this case, defeating Robbins' motion to dismiss, and also, traditionally, precludes arbitration of the dispute, since the subject matter of the dispute has been thus cast as belonging to the exclusive competence of the federal courts. *See Diematic, supra*, 381 F.Supp. at 1061; *Homewood Industries, Inc. v. Caldwell*, 179 U.S.P.Q. 701 (N.D.Ill.1973).

However, notwithstanding the public policy concerns, arbitration clauses commonly are enforced in trademark, patent and copyright infringement cases, as was the arbitration claim in the Agreement in this case. Various issues arising in a dispute involving a trademark, patent or copyright may be arbitrated with the exclusion, perhaps, of the validity of the federally protected interest itself. *N.V. Maatschappij Voor Industriele Waarden v. A. O. Smith Corp.*, 532 F.2d 874, 876 (2d Cir. 1976); *Robin Products Co. v. Tomecek*, 465 F.2d 1193, 1196 (6th Cir. 1972); *Necchi Sewing Machine Sales Corp. v. Necchi, S. p. A.*, 369 F.2d 579, 582 (2d Cir. 1966); *Stepdesign v. Research Media, Inc., supra; Diematic, supra; Foster Wheeler, supra*, 440 F.Supp. at 901; *Saucy Susan Products, Inc. v. Allied Old English, Inc.*, 200 F.Supp. 724, 728 (S.D.N.Y.1961) (Feinberg, J.); *see* Janicke and Borovoy, Resolving Patent Disputes by Arbitration: An Alternative to Litigation, 62 J. Pat. Off. Society 337, 355–58 (1980). Here, of course, the court previously has determined that this action arises under the Copyright Act. However, there appears to be no reason why the arbitrator, having been presented with the dispute over the Agreement, which was basic to this action, lacked the power, once he had interpreted the Agreement and concluded that certain of Robbins' activities with respect to Manilow compositions were without license, to find the infringements had occurred, and to assess damages and attorney's fees with reference to the Copyright Act. This is not a case in which the question of infringement must be decided as a prerequisite to the determination of the meaning of a contract. *E. g., Diematic, supra*, 381 F.Supp. at 1061; *cf. Tart v. Walker*, 203 U.S.P.Q. 460, 462 (N.C.1978). Indeed, the opposite is true here, and no authority has been presented which, as a jurisdictional matter, would preclude the arbitrator from making the findings he did with reference to the Copyright Act, as an extension of his primary task in this case. *See Stepdesign, supra; Levin v. Ripple Twist Mills, Inc.*, 416 F.Supp. 876, 880–81 & n.10 (E.D.Pa.1976).

While an arbitrator, even in this context, is commonly thought to lack jurisdiction to determine the validity of a copyright, *see N. V. Maatschappij, supra; Foster Wheeler Corp. v. Babcock & Wilcox Co.*, 440 F.Supp. 897, 901 (S.D.N.Y.1977); *but see Robin Products, supra*, here the arbitrator did not make the determination of validity. Indeed, the one of Robbins' objections to the conduct of the arbitration proceedings which is well taken is that the arbitrator apparently accepted into evidence cer-

---

8. 28 U.S.C. § 1338 provides:

    The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

tain certificates of registration as prima facie evidence of validity of the copyrights, a prerequisite to the establishment of infringement, *see Warner Bros., Inc. v. American Broadcasting Companies, Inc.*, 654 F.2d 204 at 208 (2d Cir. 1981); 17 U.S.C. §§ 411, 412, and then refused to hear rebuttal evidence on the issue of validity, *see Durham v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980).[9]

9. At one point in the proceedings, during the examination of Manilow, an objection by Kamakazi to a question by Robbins concerning Manilow's ownership of the copyrights provoked the following exchange:

THE ARBITRATOR: ... I don't know what the relevance of the ownership of these copyrights is to our proceeding.

You derived your rights from Kamakazi and nobody has challenged those rights other than in this proceeding. So, does it matter to our proceeding whether they have it or not?

MR. OSTERBERG: Sure, it does. Because I think if he does not have the rights or if Kamakazi does not have the rights, it may be possible that we have a complete defense that we are free to print and sell all copies of all these compositions without any copyright obligation or license obligation.

THE ARBITRATOR: That's not the issue I am deciding in this arbitration. You may decide that in some other forum, that you have a right to publish freely, but the issues I am deciding are the rights pursuant to the Kamakazi/Robbins agreement.

Now, the Kamakazi/Robbins agreement says Kamakazi's giving you the right to publish so many documents, songs, for a period of time. The period of time, according to Kamakazi, expired; according to Robbins, did not expire.

During that period of time, did anyone seek to publish in violation of Robbins' rights? Did anyone claim of Robbins that it was publishing without a license, without a right? Other than those issues, it is irrelevant to my decision.

If you had a right outside the agreement, that's not the subject of this litigation, this tribunal.

MR. OSTERBERG: I respectfully submit it would be, because if, in fact, we had the right outside the agreement to do what the agreement purports to authorize, I think that they cannot possibly suffer any legal damage by a violation of the agreement.

The whole predicate for their claim under the agreement is based upon a claim that they have the exclusive rights and, therefore, if we don't have the rights under the agreement, we don't have anything. And if we have the rights outside of the agreement, they suffer no loss by our doing what we did.

MR. FRANKEL: There are several responses to that, if I may.

THE ARBITRATOR: Go ahead.

MR. FRANKEL: In the first place, under Title 17 of the United States Code, this certificate—each of these certificates is prima facie proof of the facts stated therein. And the facts stated therein include the ownership of the copyrights in Kamakazi Music Corp.

In the second place, to the extent that Mr. Osterberg seeks to challenge the facts stated therein, first of all, we think it is outside the scope of the arbitration; and, second of all, Mr. Manilow is not the appropriate vehicle to seek to challenge that.

If Mr. Osterberg is attempting to raise an issue under the copyright laws, the appropriate expert and the appropriate technical witness is someone other than Mr. Manilow. There is no foundation for thinking that Mr. Manilow is an expert with respect to the requirements of Title 17 or that he has technical knowledge of the manner in which his compositions from the time of their creation by him result in the filing of a copyright registration or a certificate of copyright registration with the Office of the Copyrights.

THE ARBITRATOR: I am going to sustain the objection to your question as to what he claims.

MR. OSTERBERG: May I be heard just a little further?

THE ARBITRATOR: Sure.

MR. OSTERBERG: We have in evidence in this proceeding Exhibit 63, which is a collection of copyright certificates.

Presumably, they were offered in evidence, received in evidence, for the purposes of showing something; for purposes to show copyright ownership through the prima facie evidence of the certificates.

And I respectfully submit I should be entitled to inquire, at least to my satisfaction, as to whether that prima facie evidence is sufficient.

To the extent that it is not submitted for any purposes to establish copyright ownership, then I ask that they be stricken from the exhibit list and excluded from these proceedings.

It seems to me you can't cut both ways. They put them in evidence and say I can't inquire about them. If it is truly irrelevant, then I move at this time to have them excluded from the proceeding.

THE ARBITRATOR: Mr. Frankel?

MR. FRANKEL: Mr. Manilow is not here claiming anything. He is here because he has been ordered to be here to answer questions as to his knowledge of the relevant facts.

THE ARBITRATOR: Let's come back to the copyrights. Are they relevant or irrelevant?

MR. FRANKEL: The copyrights are relevant. And the certificates, prima facie, establish

Nevertheless, Robbins claims, in effect, that the matter of interpreting the Agreement alone was presented to arbitration, *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *Farkar Co. v. R. A. Hanson Disc, Ltd.*, 583 F.2d 68, 71 (2d Cir. 1978); *Lawson Fabrics, Inc. v. Aksona, Inc., supra*, 355 F.Supp. at 1148, and that it was surprised to its prejudice by the awards which included determinations under the Copyright Act. I conclude that the arbitration clause [10] is broad enough to include the infringement claims made by Kamakazi. *See id.*, at 1148–49. Furthermore, I conclude that Robbins is estopped from this challenge to the awards. *Cavicchi v. Mohawk Mfg. Co.*, 34 F.Supp. 852 (S.D.N.Y.1940); *see Fallick v. Kehr*, 369 F.2d 899, 904 n.11 (2d Cir. 1966); *Vanderveer v. Erie Malleable Iron Co.*, 139 F.Supp. 340 (W.D.Pa.), *aff'd*, 238 F.2d 510 (3d Cir. 1956), *cert. denied*, 353 U.S. 937, 77 S.Ct. 815, 1 L.Ed.2d 760 (1957). Although Robbins did not prevail on its motion to dismiss, it was Robbins which, aware of the nature of Kamakazi's chief claim, argued successfully for a stay in favor of arbitration pursuant to the Agreement. On the record before the court, there is no basis for a conclusion that the arbitrator's invocation of the copyright law was contrary to the reasonable expectations of the parties. *Cf. John T. Brady & Co. v. Form-Eze Systems, Inc., supra*, at 264.

In any event, the facts at bar support the conclusion that, beyond having been party to the Agreement containing the arbitration clause pertaining to all future disputes, Robbins agreed, by virtue of the position it took before this court last year, to arbitrate this *existing* dispute, with its known copyright infringement element. Thus any public policy concern about arbitrating such matters is vitiated. *Lawson Fabrics, supra*, at 1149–50; *cf. DeCosta v. CBS, Inc.*, 520 F.2d 499, 505 (1st Cir. 1975), *cert. denied*, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976); *Cobb v. Lewis*, 488 F.2d 41, 49 (5th Cir. 1971); *Coenen v. R. W. Presspich & Co.*, 453 F.2d 1209, 1213–1215 (2d Cir. 1972). *Compare Fischer v. New York Stock Exchange*, [1975–76 Transfer Binder] Fed. Sec.Law Rep. (CCH) ¶ 95,416, at 99,101–102 (S.D.N.Y.1976).

Both parties have provided the court with selected excerpts from the record consisting of their own submissions and remarks and the statements of the arbitrator—as well as this court's prior opinions—to support their arguments as to the nature of the proceedings, and the award which could be expected. Nothing conclusive emerges therefrom. Nor does the language of this court's pronouncements of June 5, June 11 and December 1, 1980 in this case clearly aid Robbins. Robbins' position as to the extent of the arbitrator's mandate, however, is untenable in light of the following excerpt appearing at pages 330–31 of the hearing transcript, relatively early on in the proceedings. The arbitrator there stated:

Mr. Frankel suggested that perhaps I might wish to use my discretion to defer consideration of damages between the parties in the hearing and permit Judge Sweet in the Federal proceeding to hear and award damages with respect to all parties including Barry Manilow and Warner Bros.

Mr. Frankel indicated that the testimony here would probably be duplicative of the testimony to be given in the Southern District case, and that perhaps in an effort to save time, I might consider not hearing the damage issue.

Mr. Osterberg raised the potential that he might argue in the Federal Court, Southern District case that the award of damages and the arbitration might limit Judge Sweet and that, therefore, he did

the ownership of the copyrights in Kamakazi Music Corp.

The question is whether Mr. Manilow claims particular legal consequences that flow from what was done with his compositions after he finished creating them. And that is the improper question; he is not claiming any-

thing here. He is just answering questions as to his knowledge of the facts.

THE ARBITRATOR: Well, I will sustain the objection, in any event.

**10.** *See note 2, supra.*

not believe that the damage issue should be waived at this hearing.

After considering the arguments, I determined and expressed to Mr. Frankel my opinion that the arbitration between the two parties, which was referred to the American Arbitration Association pursuant to Judge Sweet's opinion, should be a total resolution of the claims and liabilities between the parties; that is, Kamakazi Music and Robbins Music, and that I was not prepared to exercise discretion, if I have any, to not hear the damage issue, and that I would hear testimony as to damages.

We had a continued discussion as to whether the arbitration should be bifurcated and liability first determined, and the parties agreed that they would try all the issues at once rather than spreading the case.

Robbins' intention in this regard is again expressed as a "Sixth Separate Defense" in Paragraph 40 of its answer filed in this court on May 12, 1981, repeated verbatim in the amended complaint filed on June 1:

Each of the alleged claims designated as a "CAUSE OF ACTION," is barred by the election of remedies set forth in the Arbitration Agreement, and the only relief available for the alleged wrongful acts is through a claim by KAMIKAZI MUSIC CORP. in arbitration for breach of contract governed by New York law.

■ There is no apparent reason why Robbins could have precluded the court from consideration of statutory damages in this case had the arbitrator assigned contract damages, for regardless of how the action is labeled, infringement unmistakably was the injury to be addressed upon an interpretation of the Agreement favorable to Kamakazi. Cf. Doll v. Libin, 17 F.Supp. 546, 458 (D.Mont.1936). There was nothing surprising or improper about the arbitrator's so doing in these circumstances, upon Kamakazi's election of remedies. Indeed, there is nothing in the record before the court by way of response to Kamakazi's election or anything else, to indicate that at

any time during the lengthy proceedings preceding the March Award Robbins raised an objection to the clearly expressed potential scope of the proceedings as far as infringement and the assessment of damages are concerned, which apparently differed substantially from its own view of the limitation of the proceeding. Cf. Kurt Orban Co. v. Angeles Metal Systems, 573 F.2d 739, 740–41 (2d Cir. 1978); Sweeney v. Morganroth, 451 F.Supp. 367 (S.D.N.Y.1978).

As the Court of Appeals recently repeated:

To establish a claim for copyright infringement, a plaintiff 'must show ownership of a valid copyright and copying by the defendant.' Novelty Textile Mills, Inc. v. Joan Fabrics Corp., 558 F.2d 1090, 1092 (2d Cir. 1977).

Warner Bros., Inc. v. ABC, Inc., supra, at 208. Thus, assuming for the moment the validity which Kamakazi asserts, the infringements are, in effect, established since the only issue with respect to copying was whether or not Robbins' activities were under license. Robbins' weak challenge in that regard has run up against the very strict standard for vacating such findings of an arbitrator, and failed. Similarly, given the arbitrator's findings that Robbins "was aware of the time limitation [with regard to personality folios, contained in the agreement], and [Kamakazi's] intention to rely thereon," that Robbins did not comply with the requirements for gaining further sell-off rights, and that [Robbins] did sell [Kamakazi's] copyrighted works after December 31, 1979 without license," there is adequate basis for the finding of willfulness. See Fallick v. Kerr, supra, at 904. Robbins has suggested no reason why, given this foundation and all of the evidence in the arbitration record, an award of statutory in-lieu damages would be inappropriate, cf. Lottie Joplin Thomas Trust v. Crown Publishers, Inc., 592 F.2d 651, 657 (2d Cir. 1979), or why the award of $10,000 per infringement is unreasonable, no less subject to vacation.[11] Indeed, Robbins has raised no such challenge.

11. See note 5, supra.

Beyond the arguments addressed to the arbitrator's lack of power and his disregard of the intentions of the parties as to the scope of arbitration, Robbins raises a number of challenges to the findings and conclusions which can be disposed of summarily.

It is urged that a royalty check for $11,581.03 tendered by Robbins and accepted by Kamakazi during the pendency of the arbitration covered the allegedly infringing uses and acted as a confirmation of the license and thus a waiver of the infringement claim. The arbitrator specifically found that "[n]o waiver or accord and satisfaction occurred upon payment and receipt" of this check in November, 1980. There has been no sufficient showing either of fact or law for the court to disturb this finding of the arbitrator, presumably based on the full record, which is not now before me. Nor has a basis been provided to upset the arbitrator's findings with respect to the filing of written detailed inventories. (March Award, Findings F & I). *Orion Shipping & Trading Co., Inc. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 300 (2d Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963); *MCT Shipping Corp. v. Sabet*, 497 F.Supp. 1078 (S.D.N.Y.1980);

*Petroleum Transport, Ltd. v. Yacimientos Petroliferos Fiscales*, 419 F.Supp. 1233, 1235 (S.D.N.Y.1976), *aff'd*, 556 F.2d 558 (2d Cir. 1977).[12]

Robbins objects to the procedure by which the award of attorney's fees was made. Initially, it is claimed that the arbitrator violated Section 40 of the Commercial Arbitration Rules of the AAA, by failing to file the Supplemental Award, the award of attorney's fees, within thirty days of the parties' post-hearing submissions. The fact is, of course, that following those submissions on February 12, 1981, the Award was issued on March 6, 1981, pursuant to which Kamakazi then filed its affidavit of legal services, and the Supplemental Award was issued on April 7. There is no showing that this timetable is violative of the AAA Rules. Even assuming a violation, the court is aware of no authority for overturning the award, presumably under 9 U.S.C. § 10(c),[13] on this ground. Robbins claims further that the arbitrator's provision for and acceptance of the affidavit of legal services on the issue of attorney's fees in lieu of a hearing including cross-examination, which he previously indicated would be held on the issue,[14] was another impro-

---

**12.** Indeed, Robbins' challenge appears to be specifically to the arbitrator's finding with respect to compliance with the requirements of written inventory and identification of mixed folio uses, for which, in any event, no infringement was found because of Kamakazi's acquiescence in Robbins' non-compliance. (March Award, Finding J).

**13.** 9 U.S.C. § 10(c) provides that an award may be vacated:

Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

**14.** Robbins is referring to the following exchange, appearing on pages 1816–1821 of the arbitration transcript:

MR. FRANKEL: I think it appropriate for you to know that the cost and attorneys' fees for which we seek compensation in connection with this dispute are, in my view, extremely substantial and we are prepared to go ahead now, if you want. We are prepared

to defer it, if you want. We stand at your bidding.

THE ARBITRATOR: I am inclined to defer it mainly because I think we ought to get to a point where this case should be decided as to liability in the main and I am wary of getting involved in the proof of costs and fees and a cross-examination thereof and running over to another session and delaying the decision that much further. I am going to be tied up all next week and I'm going away the following week so if we run over into another session, you are looking at the end of January. We can proceed now, if you like. I think it is the type of proof which can be done in a short amount of time, but perhaps a shorter amount of time once there has been a determination of an award in that regard. What I am saying is I can see a cross-examination being quite much more extensive if there is a possibility that it may or may not be awarded, whereas once an award of fees has been granted, the actual computation and testimony as to the expenditures I can see being much shorter and much shorter subject to cross-examination.

priety calling for vacation of the word, again, presumably, under 9 U.S.C. § 10(c). However, Robbins' citation to *Totem Marine Tug & Barge v. North American Towing, Inc.*, 607 F.2d 649, 652–53 (5th Cir. 1979) and AAA Rule 30, having to do with *ex parte* arbitration proceedings, is unpersuasive. The arbitrator here did not receive *ex parte* evidence on attorney's fees, and no authority has been presented to the effect that it is improper for an arbitrator to proceed as did the arbitrator here, regardless of prior indication that he would proceed otherwise. Robbins had ample opportunity in which to make any submissions in opposition to the merits of Kamakazi's affidavit of services, and apparently did not.[15]

On this record I do not conclude that the award of attorney's fees was impermissible or unreasonable, *e. g. United States v. AS-CAP*, 466 F.2d 917 (2d Cir. 1972); *Marcy Lee Mfg. Co. v. Cortley Fabrics Co.*, 354 F.2d 42, 43 (2d Cir. 1965); *Samet & Wells, Inc. v. Shalom Toy Co., Inc.*, 429 F.Supp. 895, 904 (S.D.N.Y.1977), *aff'd mem.* 578 F.2d 1369 (2d Cir. 1978); nor, again, has Robbins raised such a claim.

■ As recounted above, whether or not he had the power to do so under these circumstances, the arbitrator made no finding concerning the validity of the copyrights, a prerequisite to a finding of infringement. It thus remains for this court to pass on copyright validity before confirmation of the awards can be considered. I deem Kamakazi's submissions in this regard, including copies of copyright certificates of registration submitted as Exhibit 7 to its reply affidavit, a motion for summary judgment on the issue of validity. Although the challenge to validity thus far does not raise a genuine issue of material fact, since Robbins was cut off before the arbitrator on this issue,[16] such a motion cannot be granted on the present record. Therefore, the parties are granted leave to make further submissions within ten (10) days on this issue and the court will hear further argument if it is requested at its regularly scheduled motion calendar. At the same time, the court will focus upon the discrepancy between the claim of Kamakazi, made both during and after arbitration, that forty five separate copyrights were infringed by Robbins, and the arbitrator's express finding (and the award based thereon) that twenty five copyrights had been infringed.

Other than on issue of the validity of the twenty five copyrights comprising, according to the arbitrator, "twelve individual works and thirteen compilations or derivative works," which were found to have been infringed,[17] there is no basis upon which to upset or tamper with the awards.

MR. FRANKEL: I am certainly willing to go along with that.

THE ARBITRATOR: Is that a problem for you, Mr. Osterberg, if we hold that off? You may want to put your evidence in of fees at that time, assuming you get an award.

MR. OSTERBERG: I urge upon you the reservation of determination on that issue because I do not believe that an award of attorneys' fees would be proper under the arbitration agreement.

THE ARBITRATOR: I have not made a determination.

MR. OSTERBERG: But that certainly would be one of the issues for you to determine.

THE ARBITRATOR: One of my reasons in deferring it is I recognize it to be an issue. And rather than dealing with perhaps questions of relevance, admissibility with respect to the evidence, I think a determination of whether a liability exists can be made first and then the damages later. So that unless you object or Mr. Frankel objects, I will hold that until a determination.

MR. OSTERBERG: Thank you.

15. Following the March Award, Robbins did file a notice of objection to the assessment of attorneys' fees, based on jurisdictional grounds apparently rejected by the arbitrator, and rejected herein by this court; New York C.P.L.R. § 7513 (which provides for the assessment of expenses and fees by an arbitrator not including attorneys' fees); and "the ground that it would circumvent the right of cross-examination recognized by the arbitrator for deferring the receipt of such proof during the arbitration."

16. *See* note 9, *supra*.

17. Kamakazi has consistently maintained, both during and following the arbitration, that forty five separate copyrights were infringed by Robbins.

The awards of the arbitrator are thus held in abeyance pending this court's determination of the issue of the validity of twenty five copyrights found to have been infringed.

As to Robbins' motion to dismiss Kamakazi and Warner's fifth cause of action, notwithstanding the views of Professor Nimmer, 1 M. Nimmer, The Law of Copyright, § 1.01[B][1], at n.46 (ed.1979), I am persuaded by the careful analysis of Judge Owen in *Harper & Row, Publishers Inc. v. Nation Enterprises,* 501 F.Supp. 848, 852–54 (S.D.N.Y.1980), that the tortious interference with contract claim is based on the same factual allegations as the copyright infringement claims, that it does not afford plaintiffs rights "different in kind" from those protected by the copyright laws, and thus that it is preempted under the Copyright Act, 17 U.S.C. § 301. Accordingly, Robbins' motion to dismiss this cause of action is granted. Both sides' motions for counsel fees and costs on this motion are denied.

IT IS SO ORDERED.

### APPENDIX A

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Arbitration Agreement entered into by the above-named Parties, and dated November 15, 1976, and having been duly sworn and having duly heard the proofs and allegations of the Parties, FIND, as follows:

A. The written agreement, Exhibit "A" is ambiguous and therefore parol evidence may be relied upon to determine the entire agreement between KAMAKAZI MUSIC CORP., hereinafter referred to as CLAIMANT, and ROBBINS MUSIC CORPORATION, hereinafter referred to as RESPONDENT.

B. The term of the agreement expired on December 31, 1979.

C. CLAIMANT and RESPONDENT made a distinction in their agreement between personality folios and mixed folios and different terms were agreed to with respect to each.

D. The agreement between CLAIMANT and RESPONDENT permitted RESPONDENT to sell off all copies of the compositions of CLAIMANT in individual sheet music, individual editions and personality folios (folios featuring compositions of or associated with a particular musical personality) in RESPONDENT'S inventory as of December 31, 1979 which sell-off right would last until July 31, 1980 provided, however, a written detailed inventory of same was submitted within forty-five (45) days after December 31, 1979, i. e., February 14, 1980.

E. RESPONDENT was aware of the time limitation and CLAIMANT'S intention to rely thereon.

F. RESPONDENT did not submit the written detailed inventory by February 14, 1980 and therefore did not comply with the conditions of the agreement which would have permitted it the right to sell off its inventory of individual sheet music, individual editions and personality folios.

G. The agreement between CLAIMANT and RESPONDENT permitted RESPONDENT to manufacture and sell copies of the compositions of CLAIMANT in mixed folios (folios containing a collection of songs not associated with any particular artist or writer) previously manufactured and sold by RESPONDENT in the same form until December 31, 1980 and the right thereafter to sell off such mixed folios on hand at December 31, 1980 until depletion provided that RESPONDENT advise CLAIMANT on or before January 1, 1980 of the mixed folios in which CLAIMANT'S compositions had been included.

H. The agreement between CLAIMANT and RESPONDENT permitted RESPONDENT to sell off mixed folios after July 31, 1981 only if RESPONDENT paid to CLAIMANT all royalties which would be payable on

all copies of CLAIMANT'S compositions in RESPONDENT'S inventory as of July 31, 1981.

I.  RESPONDENT did not advise the CLAIMANT of the mixed folios in which CLAIMANT'S compositions were included on or before January 1, 1980 and therefore did not comply with the conditions of the agreement which would have permitted it the right to manufacture and sell the mixed folios thereafter as aforementioned.

J.  CLAIMANT acquiesced in the failure of RESPONDENT to advise CLAIMANT of the mixed folios by January 1, 1980 and CLAIMANT by such acquiescence and by express statement contained in its Post Trial Memorandum waived its right to damages by reason of RESPONDENT'S late advice.

K.  The agreement between CLAIMANT and RESPONDENT requires RESPONDENT to provide CLAIMANT with all plates, negatives and artwork at RESPONDENT'S cost when the RESPONDENT'S manufacturing rights cease.

L.  Any printing or publication of CLAIMANT'S copyrighted works whether individual sheet music, individual editions, or personality folios after December 31, 1979 was without license and constituted an infringement of CLAIMANT'S copyrights.

M.  RESPONDENT did sell the CLAIMANT'S copyrighted works after December 31, 1979 without license, more particularly RESPONDENT sold copies of twelve individual works of CLAIMANT and thirteen compilations of CLAIMANT'S works.

N.  CLAIMANT has elected to recover statutory damages for all infringements with respect to any one work pursuant to 17 USCS § 504(c).

O.  RESPONDENT committed infringements subsequent to December 31, 1979 with respect to twenty-five works, said works being twelve individual works and thirteen compilations or derivative works as such are defined under 17 USCS § 101.

P.  The infringements were committed willfully.

Q.  No waiver or accord and satisfaction occurred upon the payment and receipt of a check of $11,581.03 in November, 1980.

R.  The Arbitrator finds the Counterclaim to be without merit.

S.  The Arbitrator finds that the just amount which CLAIMANT should recover is $10,000.00 for all infringements with respect to each work, for a total sum of $250,000.00.

T.  The Arbitrator finds that CLAIMANT should also recover its costs and reasonable attorney's fees.

THEREFORE, I AWARD as follows:

1.  RESPONDENT shall pay to CLAIMANT the sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00).

2.  In accordance with statute 17 USCS § 505, RESPONDENT shall pay to CLAIMANT an amount to be assessed as its reasonable attorney's fees. The Arbitrator retains jurisdiction on this issue for the purpose of assessing reasonable attorney's fees. CLAIMANT shall file an affidavit of services setting forth its fees with the Association within seven (7) days after receipt of this AWARD.

3.  RESPONDENT is permanently enjoined from printing or selling at any time in the future any of CLAIMANT'S compositions except those included in mixed folios (folios containing a collection of songs not associated with any particular artist) manufactured and sold by RESPONDENT before December 31, 1979, copies of which RESPONDENT may sell, but not print, until July 31, 1981 and copies of which RESPONDENT may sell thereafter in perpetuity provided RESPONDENT pays to CLAIMANT on

or before July 31, 1981 all royalties that would be due on said copies if sold. With respect to any copies of mixed folios for which such advance royalties are not paid, on or before July 31, 1981, CLAIMANT shall have the right to purchase all or a portion thereof at RESPONDENT'S cost or in the alternative the right to require RESPONDENT to destroy all or a portion of said copies and receive an affidavit as to such destruction.

4. RESPONDENT is ordered to destroy any remaining copies of CLAIMANT'S compositions in its custody, possession or control except those contained in mixed folios as set forth above.

5. The counterclaim of RESPONDENT is denied.

6. RESPONDENT is ordered to provide CLAIMANT with all plates, negatives and artwork with respect to all publications of CLAIMANT'S compositions for which RESPONDENT shall be entitled to receive its cost of same.

7. The compensation of the Arbitrator totaling THREE THOUSAND SIX HUNDRED DOLLARS ($3,600.00) shall be borne by RESPONDENT. Therefore, RESPONDENT shall pay to CLAIMANT the sum of ONE THOUSAND FIVE HUNDRED SEVENTY FIVE DOLLARS ($1,575.00) for that portion of said compensation previously advanced by CLAIMANT to the Association and RESPONDENT shall pay to the American Arbitration Association the sum of FOUR HUNDRED FIFTY DOLLARS ($450.00) for that portion of said compensation still due the Association.

8. The administrative fees and expenses of the American Arbitration Association totaling FOUR THOUSAND NINE HUNDRED THIRTEEN DOLLARS ($4,913.00) shall be borne by RESPONDENT and postponement fees shall be borne by the Party requesting same. Therefore, RESPONDENT shall pay to CLAIMANT the sum of SIX HUNDRED DOLLARS ($600.00) for that portion of said fees and expenses previously advanced by CLAIMANT to the Association and RESPONDENT shall pay to the American Arbitration Association the sum of TWO THOUSAND TWO HUNDRED THIRTEEN DOLLARS ($2,213.00) for that portion of said fees and expenses still due the Association.

9. This AWARD is in full settlement of all claims and counterclaims submitted to this Arbitration except as provided in paragraph 2 above.

Howard W. Segal  3/6/81

## APPENDIX B

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Arbitration Agreement entered into by the above-named Parties, and dated November 15, 1976, and having been duly sworn and having previously rendered an AWARD dated March 6, 1981 in which jurisdiction on the issue of attorneys' fees was retained hereby, AWARD, as follows:

1. ROBBINS MUSIC CORPORATION shall pay to KAMAKAZI MUSIC CORP. the sum of FIFTY THOUSAND ONE HUNDRED TWENTY SEVEN DOLLARS AND SEVENTY TWO CENTS ($50,127.72), arrived at as follows:

   a. Legal fees and disbursements
   due Bender & Frankel
   
   $ 43,902.72

   b. Legal fees due Levine & Thall, P.C.
   
   6,225.00

   TOTAL:  $ 50,127.72

2. This Supplemental AWARD is in full settlement of all claims over which jurisdiction had been retained.

Howard W. Segal  4/7/81